CHARLES E. ALBRIGHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20786. Promulgated June 28, 1929.

*William C. Quarles, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, and *S. B. Anderson, Esq.*, for the respondent.

1230

## OPINION.

Marquette: The petitioner contends that his payment, in the first instance, of the premiums on the life insurance policies which he wrote for Stratton was an "ordinary and necessary expense paid * * * during the taxable year in carrying on" his trade or business; and that it is, therefore, deductible from gross income under section 214 (a) (1) of the 1921 Revenue Act.

In our opinion, the amount of premiums paid by the petitioner is not deductible as a business expense. We have no doubt that advancement of premiums for new policyholders was an ordinary procedure, frequently followed by the petitioner; we have no doubt that it was expedient to make such advances, in order to secure the business and augment petitioner's income by the resulting commissions. But, we think it was not a "necessary expense" within the meaning of the statute. The petitioner expected that he would be reimbursed for this outlay, and he was. What the petitioner did in this case was to make an advance, in the nature of a loan, of the amount of the premiums. His own testimony shows clearly that he had faith in his ability to collect the full amount advanced by him from the banks, which would largely benefit from the proceeds of the insurance in case of the death of the insured; and the same testimony leads us to believe that, if he had not expected to be repaid and believed he would be able to secure repayment, he would not have advanced the money. Manifestly, no business man would

pay out $16,000 without hope or expectation or being repaid, in order to secure $8,000 of income for himself.

But it is further contended that the petitioner was using only due and proper precaution, in advancing the premiums for life insurance as a protection of his business interests—his stock in the two banks to which Stratton was so heavily indebted. In support of that contention reliance is placed upon *Harold Mortenson*, 3 B. T. A. 300. In that case Mortenson owned 28 per cent of the stock of a company whose only capital asset was a steamship. The directors decided not to carry any marine insurance on the vessel during 1920; and Mortenson, to protect his interest, personally carried $15,000 of insurance. It was held that he might deduct the premium paid as an ordinary and necessary business expense. But in our opinion there is a clear and distinct difference between the facts and circumstances of that case, and those of the present proceeding. There, the taxpayer paid the premium with no hope or expectation of reimbursement; here, the petitioner not only expected and believed that he would be reimbursed, but the evidence indicates that he would not have paid the premium in the absence of such belief and expectancy. The other cases cited by the petitioner are not, we think, particularly in point; and, like the *Mortenson* case, they are clearly distinguishable from the present matter, upon the facts. In each of the cited cases the benefit derived, or which might be derived, as a result of the expenditures, flowed directly to the taxpayer and to him alone; he was protecting his own interest solely and directly. Here, the interest to be protected was not that of the petitioner alone; neither would the protection reach him except in a roundabout, indirect fashion. If Stratton had died during the taxable year, the insurance would have been paid, not to the petitioner, as in the *Mortenson* case, *supra;* not to the creditor banks, but to Stratton's administrator.

It is our opinion, after carefully considering the facts, that the petitioner has failed to show that the determination appealed from was incorrect.

*Judgment will be entered for the respondent.*