Faht, Circuit Judge,
sitting by designation, delivered the opinion of the court:
This is an action by ECA Communications, Inc., herein referred to as taxpayer, to recover income and excess profits taxes claimed to be due from the United States as a result of the failure of taxpayer to make a deduction from gross income for the taxable year 1945.
At the end of World War II taxpayer among others was authorized by the appropriate military authorities to “install a radio station and operate a direct circuit with the United States in order to handle press, facsimile, EFM [Expeditionary Force messages] and any other commercial traffic permitted and censored by military authorities.” Taxpayer began operating a radio station in Berlin on July 25, 1945.
About the beginning of November 1945 taxpayer, without prior permission from the proper military authorities, instituted a service whereby certain persons could place orders in Berlin for the delivery of flowers in the United States. Persons placing such orders for the flowers and the accompanying message would pay taxpayer’s Berlin office in Allied military marks — a currency issued by the Allied military authorities in Germany. The taxpayer would make a dollar payment to a florist in New York City for delivering the flowers. In carrying on this flower service in Germany taxpayer used there the unofficial conversion rate of ten Allied military marks to one dollar.
Prior to and during taxpayer’s operation of this service there was in effect a military currency directive prohibiting the transmission of funds not derived from United States official sources to any point outside the European theater and also an Executive Order regulating transactions in foreign exchange by which the Treasury Department was authorized to issue licenses to engage in foreign exchange transactions. Taxpayer never received such a license.
Soon after institution of the flower service taxpayer began efforts to convert the Allied military marks into dollars. These not having proved successful the service was termi *787 nated by taxpayer about December 6, 194b. Taxpayer’s conversion efforts continued, and were not successful until 1948. In that year, after tlie West German Government bad come into existence and established currency reform, taxpayer was authorized to and did convert these Allied military marks into Deutsche mark. The conversion rate was 100 Allied military marks to 6% Deutsche mark, the latter having an official exchange rate of $0.80, later devalued to $0,238. After devaluation in 1949 taxpayer began using the Deutsche mark, representing the Allied military marks received for the flower service, for operating expenses in Germany, and by the end of 1955 all such marks had been expended.
In its income and excess profits tax return for 1945 taxpayer did not deduct from its gross income the amounts it paid to the New York florist nor did it include in gross income the amount received in Allied military marks for the flowers. Defendant concedes that taxpayer was under no obligation to include the amount of the “flower marks” in its gross income for 1945, a concession we accept in deciding the case.
Taxpayer made a timely claim for refund, alleging that its gross income for 1945 should be reduced by the amounts paid to the New York florist, either because (1) they were an “ordinary and necessary” business expense, Int. Eev. Code of 1939, § 23(a) (1) (A) or (2) were “losses sustained during the taxable year and not compensated for by insurance or otherwise.” Int. Eev. Code of 1939, § 23(f). Defendant’s refusal to permit the deduction under either provision is based primarily on the ground that its allowance would frustrate public policy because the expenditure was made in connection with illegal activities.
The Supreme Court has held that what may otherwise be deductible as an ordinary and necessary business expense will not be allowed where its allowance would frustrate sharply defined national or state policy. Commissioner v. Sullivan, 356 U.S. 27; Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30; Hoover Express Co. v. United States, 356 U.S. 38; Lilly v. Commissioner, 343 U.S. 90; Commissioner v. Heininger, 320 U.S. 467; Textile Mills Corp. v. *788 Commissioner, 314 U.S. 326. One of the limitations of the doctrine, however, is that where the expenditure sought to be deducted does not constitute the illegal act itself or a penalty for its commission, but rather bears only a remote relation to the illegal act, the deduction will be allowed. In Commissioner v. Sullivan, supra, the Court held that expenditures for rental of premises to operate a gambling enterprise conceded to be illegal under state law, were deductible as an ordinary and necessary business expense. In the present case the United States claims specifically that the allowance of the deduction would frustrate public policy in that taxpayer’s flower service was illegal in the following respects: (1) the service was instituted without explicit approval in the prior general grant of authority to engage in radio communications and (2) the service involved a violation of a military currency directive prohibiting transmission of funds not derived from United States official sources to points outside the European theater.
Assuming arguendo that taxpayer’s authority to conduct radio communications operations did not include explicit authority for the flower service the payments of dollars to the florist in New York were not direct violations of taxpayer’s authority. They can be compared with the payment of rent in connection with the operation of a gambling enterprise in Commissioner v. Sullivan, supra. As was said in Commissioner v. Heininger, supra, at 474, “It has never been thought, however, that the mere fact that an expenditure bears a remote relation to an illegal act makes it nondeductible.”
Concerning the currency directive, for all that appears the dollars paid to the New York florist were not transmitted from Germany, and the “flower marks” were converted only in 1948 as then permitted. It appears, therefore, that taxpayer’s payments to the florist in this country did not violate the specific prohibitions of the currency directive. And the conduct of a service which contemplated conversion of marks into dollars or transmission of the latter, neither of which in fact occurred until 1948, as above indicated, does not seem to us to preclude allowance of the deduction on the theory that a severe or immediate frustration of a well defined na *789 tional policy would result from its allowance. See Tank Truck Rentals, Inc. v. Commissioner, supra, at 35. The currency directive relied upon by the United States was a complex military type of order, phrased in non-explicit language insofar as here pertinent. There was certainly no violation by taxpayer of its underlying policy to prevent black market traffic in the Allied military marks since taxpayer was never successfid in converting the marks to dollars. Nor do the findings of the Commissioner permit the assumption that taxpayer was acting in bad faith.
Defendant also argues that taxpayer by its own admission acted merely as an agent for the sender, expecting reimbursement for the cost of the flowers, and that in such circumstances the outlay for flowers was not an ordinary and necessary business expense. While some of the older Tax Court cases, involving expenses in the nature of personal loans, would appear to support this contention, Henry F. Cochrane v. Commissioner, 23 B.T.A. 202 (1931), and Charles E. Albright, 16 B.T.A. 1228 (1929), a more recent and apposite case allows as ordinary and necessary business expenses amounts expended by a taxpayer for which he was subsequently partially reimbursed. In Pittsburgh Indus. Eng'r Co., 9 T.C.M. 1132 (1950), the Tax Court held that a company’s unconditional liability for traveling expenses paid to its employees coupled with their actual payment made them deductible as ordinary and necessary business expenses in the year in which they were accrued and incurred irrespective of whether or not the company was reimbursed for those expenses by a government corporation under the terms of a defense contract.[1]
We come now to the question whether the amounts paid by the taxpayer to the New York florist were “ordinary and necessary” business expenses within the meaning of section 23 (a) (1) (A) of the Code. We think they were. The Commissioner found that the taxpayer entered into the service not to obtain a profit on the cost or price of the flowers, but rather to stimulate its message business. In determining whether a particular expense is ordinary and necessary broad *790 criteria have been established by the Supreme Court. In Welch v. Helvering, 290 U.S. 111, 113-14, the Court said:
Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by the time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often.
And in Deputy v. Dupont, 308 U.S. 488, 496, the Court said:
One of the extremely relevant circumstances [in determining whether an amount is an ordinary and necessary business expense] is the nature and scope of the particular business out of which the expense in question accrued. The fact that an obligation to pay has arisen is not sufficient. It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling.
Understanding that each case turns on its own facts we conclude that the manner taxpayer used to make its service more attractive was a business technique not unusual to the communications industry, one which we might note reflects a nationwide practice in the industry.
Finally, as to whether 1945 is the proper year for allowance of the deduction, we have the undisputed fact that taxpayer’s obligations to the New York florist became due and were actually paid in 1945. This would end the matter were it not for defendant’s contention that taxpayer’s subsequent attempts to gain conversion of the marks barred the taking of the deduction in 1945. This case, however, is not an “accrual” one where taxpayer seeks to deduct an amount accrued but not paid and the liability for which he is still contesting. The fact that the expense sought to be deducted was not contested, and was due and paid in 1945 sufficiently distinguishes this case from Dixie Pine Co. v. Commissioner, 320 U.S. 516, and Security Flour Mills v. Commissioner, 321 U.S. 281.
We are of opinion, without the necessity of deciding other points raised,[2] that taxpayer’s dollar payments to the New *791 York florist were deductible as an ordinary and necessary business expense for the taxable year 1945.
Judgment will be entered for plaintiff with interest thereon as provided by law, the amount of plaintiff’s recovery to be determined pursuant to Buie 38 (c) .[3] It is so ordered.
Laramore, Judge, and Whitaker, Judge, concur.

 A subsequent partial reimbursement of the company by the government corporation was ruled to be Income for the year in which It was received.

 Defendant’s concession that taxpayer was not liable for reporting the “flower marks” as income in 1945 removes that aspect of the case from our consideration. Whether taxpayer was liable for income in 1949 when the marks as devalued became convertible into Deutsche mark and their use commenced is also not presented In the case.

 We Rave not reduced the amount authorized to be recovered by subtracting from it the amount realized from the flower marks when they were converted and used in Germany as set forth in the opinion. This was not gone into by the parties in their presentation of the case.