James F. BOCCARDO, Lorraine Boccardo and the Boccardo Law Firm, a partnership, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 382–85T.

United States Claims Court.

April 21, 1987.

Stanford G. Ross, Washington, D.C., for plaintiffs; Arnold & Porter, Kenneth J. Krupsky, and M. Grace Fleeman, Washington, D.C., of counsel.

Douglas A. Richards, Washington, D.C., with whom was Asst. Atty. Gen. Roger M. Olsen, for defendant; Mildred L. Seidman, Gerald B. Leedom, and David C. Hickman, of counsel.

## OPINION

MAYER, Judge.

Plaintiffs claim they were improperly denied a deduction for unrecovered litigation expenses paid under contingent fee agreements. There are no material facts in dispute and the case is before the court on cross-motions for summary judgment.

### Background

Plaintiff James F. Boccardo [1] is the senior partner in the Boccardo Law Firm (the firm) in California. The firm's practice

---

**1.** Lorraine V. Boccardo is a party because she filed a federal income tax return jointly with her husband for the year at issue. The counts of the complaint pertaining to the Boccardo Law Firm were dismissed by order of the court. For convenience, only James F. Boccardo is referred to as plaintiff.

consists primarily of personal injury cases handled on a contingent fee basis. The standard contingent fee agreement states that the firm would "pay all preparation and trial costs," which typically include filing fees, medical expenses, expert witness fees, deposition costs, and investigation expenses. The agreement further provides that "from any settlement or judgment said costs shall be deducted and repaid" to the firm, the attorneys' fee would be a percentage of the amount recovered after the costs are deducted, and if "there is no recovery on said claim, [the firm] shall receive nothing for [its] services nor for costs paid." The firm also did not recover all its costs if the settlement or judgment was less than the litigation expenses.

During its fiscal year ending in February of 1978, the firm undertook only cases that it considered both meritorious and likely to result in a recoverable judgment, settlement, or award. As a result, it recovered nearly 90 percent of the expenses associated with the cases taken on that year. As plaintiff explained, the firm "expected to win most of its cases and, thereby, receive reimbursement of its expenses." Most of them, however, required two to three years to resolve, and most expenditures were not recovered or determined to be unrecoverable for three to four years.

Both the firm and plaintiff used the cash method of accounting, which ordinarily requires that expenditures and revenues be recognized when the cash is actually paid out or received. For fiscal 1978, the firm had $535,178 in litigation expenses from which it subtracted $244,631 in recovered litigation expenses which had been expended earlier that year or in a previous year. It claimed that its $290,547 in net litigation expenses was deductible as an ordinary and necessary business expense under section 162 of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 162. As and if these expenses were recovered in a later fiscal year, they would be included in income then.

The Internal Revenue Service (IRS) disallowed the firm's deduction, resulting in an increase in plaintiff's personal income taxes. Plaintiff filed this refund suit in which he makes a number of arguments. First, he claims an attorney may pay, as opposed to advance, litigation expenses. Second, when the reimbursement of litigation expenses is based on a contingency, the expenses are deductible under section 162,[2] and they cannot be considered loans or in the nature of loans. Third, cash basis taxpayers must take a deduction for the taxable year in which the litigation expenses are paid, and it would be irregular and inequitable to disallow an immediate deduction. Defendant resists each of these points. The court will address them in turn.

**Discussion**

**I**

Section 162(a) provides that a deduction will be allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Plaintiff says that it is "normal, usual, and customary in California ... for attorneys who represent personal injury victims to pay litigation costs," and that these costs must be deductible under this section.

█ In California it apparently is the custom in personal injury lawsuits and not unethical or illegal for counsel to advance litigation expenses. *See Herron v. State Farm Mutual Insurance Co.*, 56 Cal.2d 202, 14 Cal.Rptr. 294, 296, 363 P.2d 310, 312 (1961); *Canelo v. Commissioner*, 53 T.C. 217, 219 (1969), *aff'd*, 447 F.2d 484 (9th Cir.1971). Rule 5–104 of the California Rules of Professional Conduct provides, in pertinent part,

(A) A member of the State Bar shall not directly or indirectly pay or agree to pay, guarantee, or represent or sanction the representation that he will pay personal or business expenses incurred by or for a client ...; *provided this rule shall not prohibit a member:*

\* \* \* \* \* \*

2. All section references are to the Internal Revenue Code of 1954, as amended.

*(3) from advancing the costs of prosecuting or defending a claim or action or otherwise protecting or promoting the client's interests.*

However, contrary to plaintiff's assertion that a law firm may "pay" the litigation expenses of its clients, *Herron, Canelo,* and the Rules of Professional Conduct contemplate only the "advancing" of funds. By itself, therefore, the custom of advancing these expenses "is not sufficient to result in a determination that the litigation expenditures were deductible business expenses." *Canelo,* 53 T.C. at 224.

## II

"Where a taxpayer makes expenditures under an agreement that he will be reimbursed therefor, such expenditures are in the nature of loans or advances to another ... and are not deductible as business expenses of the taxpayer...." *Electric Tachometer Corp. v. Commissioner,* 37 T.C. 158, 161 (1961). *See Burnett v. Commissioner,* 356 F.2d 755, 759 (5th Cir.1966). Plaintiff says this reasoning is not applicable here, and a deduction under section 162(a) should be allowed, because the recovery of the expenses is contingent upon the successful resolution of the litigation. The litigation expenses are not loans, or in the nature of loans, because the clients have no obligation to repay them, and the firm is not repaid, unless the case is favorably resolved.

Persuasive precedent establishes, however, that advances of litigation and other expenses by an attorney are not deductible if the attorney expects to be reimbursed, even if the reimbursement is contingent upon the success of the case. *Canelo,* 53 T.C. 217; *Burnett v. Commissioner,* 42 T.C. 9 (1964), *aff'd in part and remanded,* 365 F.2d 755 (5th Cir.1966); *Silverton v. Commissioner,* 36 T.C.M. (CCH) 817 (1977), *aff'd mem.,* 647 F.2d 172 (9th Cir. 1981); *Herrick v. Commissioner,* 63 T.C. 562 (1975). *See Hearn v. Commissioner,* 36 T.C. 672 (1961), *aff'd,* 309 F.2d 431 (9th Cir.1962). Plaintiff has not shown why this court should deviate from this line of cases, although he frankly admits he chose this forum because the law is against him in his circuit.

In *Canelo,* plaintiffs were cash basis personal injury and tort lawyers in California who handled their cases under a contingent fee contract similar to ours. For the year in question, they recovered 90 percent of the litigation expenses they had advanced, recovery having been contingent on the successful outcome of the case. The court said, "In view of [the attorneys'] practice of screening clients and their 'good hopes' of recovery, we think it is clear that the advances herein were intended to, and did, operate as loans rather than expenses under section 162(a)." 53 T.C. at 224. *See Silverton,* 36 T.C.M. (CCH) at 826. This parallels our situation, in which the firm recovered a similar percentage of its litigation costs, and, as plaintiff says, "undertook only cases that it considered both meritorious and likely to result in recoverable judgment, settlement, or award." Therefore, according to *Canelo,* "If expenditures are made with the expectation of reimbursement, it follows that they are in the nature of loans, notwithstanding the absence of formal indebtedness." 53 T.C. at 225.

In *Burnett,* the taxpayer, who used the cash method of accounting, represented plaintiffs in personal injury and workers compensation cases under a contingent fee agreement comparable to this firm's. He recovered his expenses only if the case was successfully resolved. The court observed that "there was a close correlation between the conditions of reimbursement and the primary criterion employed by [the attorney] to select clients to receive financial assistance, *e.g.,* although reimbursement was tied to the recovery of a client's claim, assistance was granted only to those whose claims would in all probability be successfully concluded." 356 F.2d at 760. This "close correlation," plaintiff concedes, also exists in our case. As a result, both here and in *Burnett,* "a high rate of return on the advances" occurred. *Burnett* concluded "that the advances were intended to, and did, operate as loans, *i.e.,* advances virtually certain of repayment, to [the attorney's] clients." *Id.*

■ Our firm expected to recover most of the advanced expenses. Indeed, as they were incurred, they were charged to the appropriate client's account for later collection. In an analogous situation, *Canelo* said that the attorneys "made expenditures on behalf of a particular client, under a reimbursement agreement signed by the client, to pursue a claim held by the client—a claim of no use to any person other than the client. In reality, they are the client's expenditures." 53 T.C. at 225. *See Silverton*, 36 T.C.M. (CCH) at 826; *Herrick*, 63 T.C. at 563, 569. Therefore, when they are advanced the litigation costs are expenses of the client. Only when they become unrecoverable do they become expenses of the law firm.

The attorneys in *Silverton* practiced personal injury and workers compensation law in California, under a contingent fee arrangement similar to the one used by the Boccardo Law Firm. They also screened the claims for the best ones to pursue. The court followed *Canelo* and *Herrick* in denying plaintiff's deduction. But in an aside, on which our plaintiff heavily relies, the court said, "Were this a matter of first impression the writer would be more dubious about whether these advances should be characterized as loans because the writer fails to find any obligation on the part of the client to repay. The attorney looks only to the amounts recovered for repayment." 36 T.C.M. (CCH) at 825 n. 17.

Strictly speaking, this observation is correct. But it overlooks that because of the firm's screening process, there is a high probability of recovery overall, even though when it files suit it may not confidently be able to ascertain which cases it will win, lose, or settle. But it comes pretty close because while it recovered about 90 percent of the expenses incurred in 1978, only 70 percent of the cases were favorably resolved. This is because of the firm's decision to advance more on better cases than on weaker ones.

Just as the case belongs to the client, so too does any recovery. So merely because plaintiff must look to the recovery for reimbursement does not mean he is not also looking to the client. The client has promised to pay out of his recovery before the contingent attorney fee is calculated, and in a high percentage of cases that is just what happens. There is an absolute obligation to repay the advance, subject only to an overall slight chance that there will be insufficient recovery to satisfy this obligation, a contingency of about 10 percent.

Contrary to plaintiff's view, *Electric Tachometer*, 37 T.C. 158, and *Alleghany Corp. v. Commissioner*, 28 T.C. 298 (1957), also do not help him. Those cases concluded that deductions of certain expenses should not be denied simply because the possibility existed that the taxpayer might someday be reimbursed. *Electric Tachometer*, 37 T.C. at 161; *Alleghany Corp.*, 28 T.C. at 305. The taxpayers there, however, were attempting to deduct their own expenses, not the expenses of others, as here.[3] In this context, *Burnett* observed that cases like *Alleghany Corp.* "are inapposite, for they concern the possibility of recovering some or all of outright expenditures, *i.e.*, actual expense items, not conditional advances such as those involved here which cannot be considered ordinary and necessary business expenses." 356 F.2d at 760 n. 4.

Plaintiff believes *Burnett* applies only to advances made for clients' living expenses and that it "suggested," in remanding, that the litigation expenses would be deductible business expenses under section 162. It is correct that the attorney in *Burnett* "made disbursements ... principally to provide for [his clients'] living expenses." 356 F.2d at 757. But the analytic framework the court set out is directly applicable to litigation expenses. Indeed, in rejecting precisely this argument, *Canelo* stated that "the different *uses* of the advanced funds is a distinction without substance." 53 T.C. at 225. And, *Burnett* did not suggest that the "court costs" would be deductible un-

---

**3.** Plaintiff's analogy to the allowance of a deduction for state and local taxes and the like is not helpful because, although the possibility of partial recovery in the future may exist, the expenses are the taxpayer's, not those of a third party.

der section 162. It merely instructed the Tax Court on remand to "hear such evidence as is available concerning [the attorney's] claims (a) that he expended money for court costs ..., and (b) that such payments qualify as deductible expenses under Section 162(a)." 356 F.2d at 761. As explained in *Herrick*, the "clear inference" of *Burnett* "is that if the amounts deducted were advances by the attorney to his clients whether for living expenses or other expenses normally paid by the clients and there was an agreement or understanding that the attorney would be repaid, the advances were in the nature of loans and were not deductible business expenses." 63 T.C. at 569.

Plaintiff attempts to discredit the *Hearn, Canelo,* and *Herrick* line of cases by arguing that *Hearn* wrongly interpreted the early case of *Cochrane v. Commissioner,* 23 B.T.A. 202 (1931), and *Canelo* and *Herrick* then perpetuated the error. As plaintiff correctly observes, *Cochrane* disallowed a deduction for advances because the client had unconditionally agreed to reimburse the attorney. 23 B.T.A. at 208. *Hearn* relied on this as authority for the conclusion that where the expenses may yet be recovered, they are advances and, therefore, not deductible. But plaintiff overlooks that in affirming the Tax Court in *Hearn,* the court of appeals also followed *Albright v. Commissioner,* 16 B.T.A. 1228 (1929). In that case, the taxpayer, an insurance salesman, paid a customer's life insurance premiums. The payments were made without a promise of reimbursement, but because he expected to be reimbursed, the payment was "an advance, in the nature of a loan," and the deduction failed. *Id.* at 1230. That is akin to what we have here, and the court is not

persuaded to plaintiff's view of a deficiency in the longstanding reasoning reflected in these cases.

■ The firm here expected to be reimbursed and to that end it carefully screened its clients and recovered approximately 90 percent of its expenses. Therefore, the advances were in the nature of loans, notwithstanding the contingencies associated with their recovery, and they cannot be deducted as business expenses under section 162(a).[4]

**III**

■ Plaintiff says that if the firm is not allowed to take a deduction for litigation expenses in the year they are paid, it would be forced to adopt a hybrid method of accounting combining elements of the cash and accrual methods, which is looked upon with disfavor. *Boise Cascade Corp. v. United States,* 530 F.2d 1367, 1378 (Ct.Cl. 1976). It is true that under the cash method "amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid." Treas.Reg. § 1.461–1(a)(1). But once again we are talking about the clients' expenses not the firm's. It is only when a case is lost, dropped, or a full recovery not received, that the expenses become the firm's and a deduction may be taken. *See Canelo,* 53 T.C. at 226. Plaintiff's argument that the disallowance of an immediate deduction is inequitable because it distorts taxable income and results in an economic detriment fails for the same reason.

It is also incorrect for plaintiff to characterize the issue as simply a dispute over the timing of the deduction. The firm expects to be reimbursed for the advanced expenses and, in fact, usually is. So a deduc-

---

4. Section 6(14)4.5 of the Internal Revenue Manual provides:

Generally, advances in cash for expenses incurred by an attorney on behalf of a client are not deductible where the attorney is entitled to reimbursement and in fact is to be reimbursed.... In personal injury claim cases taken on a contingent fee basis, the attorney may not be entitled to reimbursement; therefore, the expense would be deductible in the year expended.

Assuming this calls for an immediate deduction in our situation, it is, nevertheless, of no help to plaintiff. As he recognizes, the Manual is not binding on the IRS because it "[does] not have the force and effect of law," *United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983), is "adopted solely for the internal administration of the IRS ... [and] does not confer any rights upon the taxpayer." *United States v. Will,* 671 F.2d 963, 967 (6th Cir.1982).

189

tion arises only in the unusual case in which there is no recovery or a recovery insufficient to cover the expenses and this cannot be determined until the case is over.

Nor does it help plaintiff to complain that defendant is treating litigation expenses differently from items of general business expense, such as salaries and utilities. That is precisely what the firm does. It keeps an individual record of litigation expenses for each client. When it successfully resolves a case, it takes those expenses off the top before figuring its fee. The general expenses are recovered as part of the fee. In other words, it too treats litigation expenses as those of its clients. Of course, this also results in a higher return than if those expenses were included with the others. For example, in an actual case settled for $1,000 with litigation expenses of $232.75 on a contingency fee of one third, the firm recovered a total of $488.50 when the expenses were paid first. It would have gotten only $333.33 if the expenses had not been segregated, and the percentage had been applied to the gross settlement.

### Conclusion

Accordingly, it is ORDERED that defendant's cross-motion for summary judgment is GRANTED, plaintiff's motion for summary judgment is DENIED, and the case will be DISMISSED.