JAMES F. BOCCARDO and LORRAINE V. BOCCARDO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boccardo v. Commissioner
Docket No. 4753-89
United States Tax Court
T.C. Memo 1993-224; 1993 Tax Ct. Memo LEXIS 232; 65 T.C.M. (CCH) 2739; May 24, 1993, Filed *232 Decision will be entered under Rule 155. For petitioners: Melvin H. Morgan and Kathleen A. Miller. For respondent: Adam S. Korbas. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' Federal income tax for 1982 in the amount of $ 56,148 and for 1983 in the amount of $ 125,717. The parties submitted a stipulation of settled issues which disposed of all but one issue. The issue remaining for decision is whether litigation costs advanced on behalf of clients by the law firm in which petitioner James F. Boccardo (Mr. Boccardo) was a partner, under agreements providing for contingent fees based on the gross amount recovered, were properly deducted in determining Mr. Boccardo's distributive share of the law firm's income. In the stipulation of facts, the parties specifically framed the issue: whether (as respondent contends) the litigation costs constitute nondeductible loans from the law firm to its clients because they are in form or in substance costs that are ultimately reimbursable to the law firm, or whether (as petitioners contend) the litigation costs are deductible in the year paid because they are not reimbursable. *233 FINDINGS OF FACT We incorporate by this reference the stipulation of facts and attached exhibits. Petitioners resided in San Jose, California, on the date the petition in this case was filed. Mr. Boccardo was the founder, and during 1982 and 1983 was the managing partner, of the Boccardo law firm (the firm). The firm's practice consisted primarily of personal injury cases, which were typically handled on a contingent fee basis. During 1982 and 1983, there were 20 lawyers in the firm, 10 to 12 of whom were partners. Mr. Boccardo was licensed to practice law in California and Washington, D.C.; the firm had offices in both locations. The firm maintained its books and records, and filed Federal partnership returns, using the cash method of accounting and on the basis of a fiscal year ended February 28. During both years at issue, the firm deducted litigation costs (filing fees, witness fees, travel, and costs for medical consultations, etc.) which it had advanced on behalf of its clients. These costs relate to cases handled on a contingent fee basis pursuant to either a "gross fee" or a "net fee" agreement. The gross fee agreement provided: IT IS FURTHER AGREED: Said Law *234 Firm shall pay all preparation and trial costs. The Law Firm's fee shall be 33 1/3% of the gross sum recovered in the event that said claim is settled before suit is filed, otherwise 40% of said gross sum. The fee herein provided shall be a lien upon the cause of action and the recovery. That no settlement shall be made without the consent of the parties hereto. In the event there is no recovery on said claim, said Law Firm shall receive nothing for its services or for costs paid. Should client discharge said Law Firm for any reason, client, upon demand, shall pay to said Law Firm reasonable value for its services to date of discharge. The net fee agreement provided: IT IS FURTHER AGREED: The Law Firm shall pay all costs. I understand that such payments are not a loan or an advance. All such costs shall be repaid to the Law Firm only out of any recovery. The attorneys' fees will be based on the percentage of the recovery after deducting costs. The Law Firm's fee for attorneys' services is 33 1/3% of the net sum recovered in the event that said claim is settled before commencement of trial, otherwise 40% of said net sum. The attorneys' fee agreed upon here is not set *235 by law but is one voluntarily agreed to by the parties. The fee herein provided shall be a lien upon the cause of action and the recovery. This fee shall not satisfy the payment of other attorneys' fees incurred with regard to other separate and distinct matters. No settlement shall be made without the consent of the parties hereto. In the event there is no recovery on said claim, the Law Firm shall receive nothing for its services or for costs. Should the attorney-client relationship cease for any reason, the undersigned client shall, upon demand, pay the Law Firm all of its costs and the reasonable value of its services to the date of such termination.
The firm accepted a case only after making a determination that it had merit and was of significant magnitude to warrant the risk entailed in a contingent fee arrangement. With respect to cases taken pursuant to a gross fee agreement, the firm's sole right to reimbursement of advanced litigation costs (other than through recovery or judgment) from a client was in the event the client terminated his/her relationship with the firm before recovery or judgment. And from the firm's inception in 1951, through and including the *236 years in issue, it had been the firm's experience that 1 percent or less of its clients had terminated their relationship with the firm before recovery or judgment. Further, it was the firm's general practice not to seek reimbursment of advanced litigation costs from any of its clients. During 1982 and 1983, 70 percent of the cases under gross fee agreements were resolved in the clients' favor. The firm's percentage share of the client awards in these favorably resolved cases was sufficient in amount to allow the firm to recoup 90 percent of the litigation costs which the firm had expended on all such cases. The firm maintained internal accounting records which recorded the amounts paid by the firm for each client case under a gross fee agreement. These costs, as well as costs related to net fee agreements, were treated as operating costs, and reduced the income of the firm, in the year paid. Petitioners concede that the litigation costs advanced by the firm pursuant to net fee agreements are not deductible. Thus, only the deductibility of litigation costs advanced by the firm pursuant to gross fee agreements is at issue. OPINION Petitioners contend that the advanced client *237 litigation costs relating to cases taken by the firm under a gross fee agreement were not loans for which the firm had a right of reimbursement, express or implied, and thus, were deductible under section 461[1] in the year paid. Respondent asserts that litigation costs were not deductible in the year paid because (1) they were paid on behalf of the clients with the expectation of reimbursement, (2) the gross fee agreements are substantially similar to net fee agreements, under which the courts have held such costs to be nondeductible, (3) the California Code of Professional Responsibility only permits an attorney to advance, not pay, such costs, and (4) the firm accounted for the costs on a client-by-client basis and was entitled to reimbursement if the client terminated the relationship. For the reasons hereafter set forth, we are compelled to agree with respondent that the advanced client litigation costs are not deductible *238 in the year paid. In Canelo v. Commissioner, 53 T.C. 217 (1969), affd. 447 F.2d 484 (9th Cir. 1971), we considered the deductibility of litigation costs advanced by a California law firm under contingent fee agreements, which provided for repayment of those costs solely from the amount recovered in the cases and fees based on a percentage of the recovery net of the costs. We therein concluded that the costs were not deductible by the law firm when advanced because they were intended to, and did, operate in the nature of loans or advancements where the firm carefully screened its cases and had "good hopes" of recovery of the costs, even though its rights to recovery were contingent on winning or settling the cases. In reaching this conclusion, we stated: Petitioners stress that their position is no different from the ordinary businessman who makes expenditures only on the likelihood that he will recover them in the course of business. We believe the situations are different. Here petitioners have made expenditures on behalf of a particular client, under a reimbursement agreement signed by the client, to pursue a claim *239 held by the client -- a claim of no use to any person other than the client. In reality, they are the client's expenditures. [Canelo v. Commissioner, supra at 225; fn. ref. omitted.]
The Court of Appeals for the Ninth Circuit, the circuit to which this case is appealable, summarily affirmed our opinion. Canelo v. Commissioner, 447 F.2d 484 (9th Cir. 1971). In Boccardo v. United States, 12 Cl. Ct. 184 (1987), the Claims Court reached the same conclusion regarding costs paid by the firm under net fee agreements. That court noted that the firm recovered about 90 percent of the costs advanced, even though only 70 percent of the cases were favorably resolved. The Claims Court observed that: Just as the case belongs to the client, so too does any recovery. So merely because plaintiff must look to the recovery for reimbursement does not mean he is not also looking to the client. * * * There is an absolute obligation to repay the advance, subject only to an overall slight chance that there will be insufficient recovery to satisfy this obligation, a contingency of about 10 percent. *240 [12 Cl. Ct. at 187]
This conclusion was supported by Canelo v. Commissioner, supra and rule 5-104 of the California Rules of Professional Conduct. [2] The Claims Court also expressly rejected the argument that these costs were unjustifiably treated differently than general business costs, such as salary and utilities. Admittedly, in form, the gross fee agreements in issue herein differ from the net fee agreements considered by the Claims Court, in providing for reimbursement of the costs solely from any recovery. In a particular case, this may result in less reimbursement: for example, if the firm pays $ 3,000 in costs on a case and recovers $ 5,000 after trial, under the gross fee agreement it recovers $ 2,000 of the costs, while under the net *241 fee agreement it is reimbursed the entire $ 3,000. However, the overall reimbursement of 90 percent of costs found by the Claims Court for the net fee agreements, and stipulated to here for the gross fee agreements, was the same under both types. In reality, under the gross fee agreements the firm had not only an expectation of, but an actual, reimbursement of costs, which was based on the historic rate of recovery from the careful screening of all contingency fee cases with costs advanced. The fact that reimbursement may be somewhat more uncertain under the gross fee agreements than under the net fee agreements is not sufficient, in our opinion, to distinguish the two types of fee arrangements. Pursuant to the gross fee agreement, reimbursement of advanced client litigation costs was expected (and was received) from the amounts recovered for the client. [3] The fact that the gross fee agreements provide for reimbursement solely from recovery on the client's claim operates only to affect the degree of contingency. And the contingent nature of reimbursement was specifically rejected as a reason for concluding that the costs paid by a law firm were not advanced with the expectation *242 of reimbursement, so as to operate in the nature of a loan in Canelo v. Commissioner, 53 T.C. 217, 224 (1969), affd. 447 F.2d 484 (9th Cir. 1971). Mr. Boccardo testified that the firm began to use gross fee agreements at the suggestion of tax counsel so that the costs in issue could be deducted. However, courts have not allowed the form of an agreement or transaction to control its operation or substance. Commissioner v. Court Holding Co., 324 U.S. 331 (1945); Upham v. Commissioner, 923 F.2d 1328, 1334 (8th Cir. 1991), affg. T. C. Memo. 1989-253. *243 "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." Commissioner v. Court Holding Co., 324 U.S. at 334. Despite the literal wording of the gross fee agreements, we conclude that in substance the firm expected and received reimbursement of the costs in issue to a substantial extent from the recoveries which belonged to the clients. Thus, under Canelo v. Commissioner, supra, the costs are not deductible by the firm as paid. In reaching this conclusion, we are not faced with a clean slate, but are mindful of the line of cases, including the affirmance by the Ninth Circuit Court of Appeals, concluding similarly as to such costs in the context of net fee agreements. See, e.g., Canelo v. Commissioner, supra; Herrick v. Commissioner, 63 T.C. 562 (1975); Boccardo v. United States, 12 Cl. Ct. 184 (1987). Petitioners have not distinguished the substantive operation of the gross fee agreements from that of the net fee type *244 agreements in these cases. Although the firm bears an economic burden because costs advanced under the gross fee agreements will ultimately reduce the fee the firm receives on recovery of the client's claim, this also occurs under the net fee agreements, to the extent of the applicable percentage of the recovery. And the heretofore decided cases do not allow any deduction of the advanced client litigation costs in the net fee agreement context. We again note that petitioners concede the nondeductibility of such costs pursuant to net fee agreements. We reject petitioners' suggestion that the issue in this case is restricted by the stipulation of facts as to whether the costs paid by the firm constituted nondeductible loans, which allegedly would require a contractual right of reimbursement. First, the breadth of the legal issue described in the stipulation is at best unclear; although it refers to loans, not advancements, it embellishes on the reference by describing the issue as whether the costs are "in form or in substance costs which are ultimately reimbursable to the firm". See King v. United States, 641 F.2d 253, 258 (5th Cir. 1981); Sivils v. Commissioner, 86 T.C. 79, 82 (1986). *245 Second, in any event, we are not bound by such a strict stipulation of a legal issue of whether the costs constitute loans versus the broader concept of advancements or reimbursable costs in the nature of loans as described in Canelo v. Commissioner, supra.Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289 (1917); King v. United States, supra; Sivils v. Commissioner, supra.Third, under the rationale of Canelo, deductibility of the costs does not depend on whether there is a contractual right of reimbursement; instead, the costs are not deductible if there is an expectation of reimbursement and actual reimbursement of a substantial amount of the costs from the recovery on behalf of the client, even though this is contingent on winning or settling the case. Petitioners assert that the net fee agreements are distinguishable from the gross fee agreements, which do not use the word "advance" or provide for reimbursement before division of any recovery and under which the firm allegedly has no contractual or implied right of reimbursement from the clients, except *246 upon termination by the clients, which occurs in only about 1 percent of the cases handled. Under Canelo v. Commissioner, supra, the costs are considered advanced to the client if they are reimbursable from the recovery on behalf of the client, even though this is a contingent right. This contingent right of reimbursement exists under both the gross fee agreements and the net fee agreements. The point at which reimbursement from the amount recovered occurs (i.e., before division of the amount to satisfy fees) affects only the extent of the contingent nature of reimbursement, not the existence of the right. We are mindful that the net fee agreements of the firm specifically provided that payment of the costs by the firm was not "a loan or an advance". However, we fail to see how this differs from the failure to use the word "advance" in the gross fee agreements. To the extent that petitioners suggest that the advanced client litigation costs are recoverable from the contingent fee of the firm, not from amounts recovered on behalf of the client, we disagree. The clear import of the California case law is that the attorney acts as the agent for the client in recovering *247 a judgment or settling a case; see, e.g., Navrides v. Zurich Insurance Company, 488 P.2d 637 (Cal. 1971). The California Rules of Professional Conduct reflect that the amount recovered in settlement or trial is recovered on behalf of the client.[4] In relevant part, rule 5-104 prohibits an attorney from paying, agreeing to pay, guaranteeing, representing, or sanctioning the representation that he/she will pay such costs incurred by or for a client, except (1) with the consent of the client, that the costs be repaid from funds collected or to be collected for the client, or (2) that the costs be advanced in prosecuting or defending a claim or action or otherwise protecting or promoting the client's interest. Rule 8-101 requires in part that funds received for the benefit of clients be deposited into identifiable trust accounts and that if a fee is disputed, the attorney can not withdraw the disputed portion until the dispute is resolved. The recovery belongs to the client, not the firm. Thus, the reimbursement of costs to the firm comes from the recovery of the client. *248 To summarize, we conclude that advanced client litigation costs incurred by the firm pursuant to its gross fee agreements in issue are not deductible in the year paid. To reflect the foregoing and the settlement of other issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue.↩
2. Effective May 27, 1989, rule 5-104 of the California Rules of Professional Conduct was amended and redesignated as rule 4-210. The amendment does not apply and in any event does not appear to change the conclusion we reach here.↩
3. We are mindful that under the gross fee agreements, the percentage fee increases from 33-1/3 percent to 40 percent when suit is filed, an earlier stage than after trial begins as provided under the net fee agreements. This appears to be intended to equalize reimbursement prospects and profitability between the two types of agreements.↩
4. In considering the California Rules of Professional Conduct, we do not mean to suggest that they are determinative of the enforceability of the gross fee agreements in issue.↩