James F. **BOCCARDO**; Lorraine V. **Boccardo**, Petitioners–Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 93–70850.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided May 26, 1995.

Burgess J. Raby, Tempe, AZ, for petitioners-appellants.

Kevin Brown, Tax Div., U.S. Dept. of Justice, Washington, DC, for respondent-appellee.

Before: FLETCHER, REINHARDT, and NOONAN, Jr., Circuit Judges.

NOONAN, Circuit Judge:

James F. Boccardo and Lorraine V. Boccardo appeal from a judgment of the United States Tax Court denying them a deduction. We reverse and direct the entry of judgment for the Boccardos.

### FACTS

James Boccardo is a partner in a law firm (the firm), whose practice consists primarily of personal injury cases. During the tax years in question, 1982 and 1983, there were twenty lawyers in the firm, half of whom were partners. The firm had offices in California and in Washington, D.C. The firm used the cash method of accounting in the federal income tax returns of the partnership. In both years, it deducted from gross income such litigation costs as filing fees, witness fees, travel expenses and medical consultation fees in connection with a case. As a partner reporting his net income from the firm, James Boccardo had the benefit of his proportionate share of these deductions on his federal tax returns filed jointly with his wife Lorraine.

The firm's "gross fee" contract with clients that gives rise to this litigation provided in relevant part as follows:

IT IS FURTHER AGREED:

Said Law Firm shall pay all preparation and trial costs.

The Law Firm's fee shall be 33⅓% of the gross sum recovered in the event that said claim is settled before suit is filed, otherwise 40% of said gross sum.

The fee herein provided shall be a lien upon the cause of action and the recovery.

That no settlement shall be made without the consent of the parties hereto.

In the event there is no recovery on said claim, said Law Firm shall receive nothing for its services or for costs paid. Should client discharge said Law firm for any reason, client, upon demand, shall pay to said Law Firm reasonable value for its services to date of discharge.

From the firm's inception in 1951 through 1983, less than 1% of its clients terminated their relation with the firm before recovery or judgment. During 1982 and 1983, 70% of the cases under the gross fee contract were resolved in the client's favor. The firm's share in the awards in these cases permitted the firm to recoup 90% of the litigation costs which the firm had expended on all cases.

With some clients the firm had a "net fee contract" where the firm explicitly agreed "to pay all costs," and the client agreed that all such costs should be repaid only out of the recovery. The costs paid under the net fee contract were held to be nondeductible in *Boccardo v. United States,* 12 Cl.Ct. 184 (1987). Well before this decision, the firm's tax counsel had recommended "the gross fee contract" as the advisable way of securing the deduction of the costs as ordinary and necessary business expenses.

### PROCEEDINGS

The Commissioner of Internal Revenue determined deficiencies in the Boccardos' federal income tax for 1982 and 1983. The Boccardos petitioned the United States Tax Court for a redetermination. On May 24,

1993, in a memorandum decision, the Tax Court sustained the Commissioner.

The Tax Court noted that under the gross fee contract the firm could recover less than under the net fee contract and that, of course, the express terms of the two contracts were different. However, the Tax Court observed that "the fact that the gross fee agreement provides for reimbursement solely from recovery on the client's claim operates only to affect the degree of contingency. And the contingent nature of reimbursement was specifically rejected as a reason for concluding that the costs paid by the law firm were not advanced with the expectation of reimbursement so as to operate in a nature of a loan in *Canelo v. Commissioner*, 53 TC 217, 224, 1969 WL 1662 (1969), *affd.* 447 F.2d 484 (9th Cir.1971)."

The Tax Court further noted that under the California Rules of Professional Conduct, 5–104 (now 4–210(A)), an attorney could not pay costs incurred by a client except where with the consent of the client the costs were to be "repaid from funds collected or to be collected for the client" or where the costs were "advanced in prosecuting or defending a claim". The Tax Court interpreted these provisions to mean that the firm had to be in the position of advancing the costs to the client when it made its disbursement to cover them; otherwise the firm's contract and conduct would violate Rule 5–104.

For both reasons, the Tax Court held that the costs paid by the firm under the gross fee contract were advances, not deductible when made.

The Boccardos appeal.

### ANALYSIS

The Boccardos argue that the firm under the gross fee contract has no contractual right to reimbursement; that there is no obligor; that the firm is no more reimbursed its expenses than a self-employed commissioned salesman is reimbursed the travel costs incurred in making a sale when the commission check for the sale finally arrives. As the gross fee contracts have both different contractual form and consequences and different economic consequences than the net

fee contracts, it was error, the Boccardos say, for the Tax Court to rely on *Canelo* and the Court of Claims decision in *Boccardo* and to treat the costs as advances. As to the Commissioner's reliance on the California Rules of Professional Conduct, the Boccardos argue that the gross fee contracts do not "violate a law of the United States or a state law that is generally enforced, which subjects the payor to a criminal penalty or the loss of a license or takes away the privilege of engaging in a trade or business." I.R.C. § 162(c). Consequently, the Boccardos contend that the litigation costs are not made nondeductible by the statutory prohibition of the deduction of illegal payments.

 It has long been established that the taxpayer has a right to arrange his affairs so as to minimize the taxes he pays. See *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). When the firm, on advice of counsel, chose to adopt different contractual terms, with a different economic result than those obtaining under the net fee contracts, the firm created an arrangement that cannot be governed by the automatic application of the cases decided on the basis of the net fee contracts. Costs are not the only expenses tied to an individual case that are not reimbursable under the gross fee arrangement. It is difficult to see how the label of "advances" with its implication of "loans" can be applied as a matter of law to payments when there is no obligation on the part of the client to repay the money expended. The factual record compiled by the IRS in no way changes our view on this point. The plain fact is that, under the gross fee contract, the firm, like other businesses, can only make a profit if it succeeds in deriving gross fee revenues that exceed its own expenses—that is, if it succeeds in keeping its own costs, including the type singled out by the IRS, lower than the fees it obtains over the course of a given year from the clients whose cases are successful.

That it is necessary for a personal injury firm to pay some of the costs of many of its clients is axiomatic; it is also ordinary practice. *See Ojeda v. Sharp Cabrillo Hospital*, 8 Cal.App. 4th 1, 10 Cal.Rptr.2d 230 (1992); Eric S. Chofnas & Laine S. Walker, "Deduc-

tibility of Litigation Costs May Be Affected By Ethical As Well As Tax Factors," 18 *Taxation for Lawyers* 82 (1989). The firm here has chosen a form which permits it to claim all ordinary and necessary expenses as deductible.

■ As far as the firm's practice in the District of Columbia is concerned, there is no ethical difficulty with this form. The old requirement that the client remains ultimately liable was jettisoned in 1980. District of Columbia Rules of Professional Conduct, Rule 1.8(d) and Comment (5) (Mar. 1, 1994). California, however, retains the rule referred to by the Tax Court. It provides:

(A) A member shall not directly or indirectly pay or agree to pay, guarantee, represent, or sanction a representation that the member or member's law firm will pay the personal or business expenses of a prospective or existing client, except that this rule shall not prohibit a member:

(1) With the consent of the client, from paying or agreeing to pay such expenses to third persons from funds collected or to be collected for the client as a result of the representation; or

(2) After employment, from lending money to the client upon the client's promise in writing to repay such loan; or

(3) From advancing the costs of prosecuting or defending a claim or action or otherwise protecting or promoting the client's interests, the repayment of which may be contingent on the outcome of the matter.

Rules of Professional Conduct of the State Bar of California, Rule 4–210(A) (May 27, 1989).

The rule, approved by the California Supreme Court, contains its own regulation of contingency fees contracts by lawyers. California Business & Professional Code §§ 6146–6149 explicitly regulates these arrangements, including the fee that may be charged. As to the payment of a client's expenses, § 6147(a)(2) requires a written statement "as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery." The statute does nothing to prohibit the lawyer paying the expenses.

In other contexts it has been observed that the rule against the lawyer shouldering the costs of litigation is a relic of old English rules against barratry, champerty and maintenance. *See Rand v. Monsanto Co.,* 926 F.2d 596, 600 (7th Cir.1991) (per Easterbrook, J.). In a federal class action, a state prohibition against the lawyer picking up the tab for costs has been invalidated as frustrating the Federal Rules of Civil Procedure, Rule 23. *Id.* at 600–601. The result has been applauded. *See* Committee on Professional Responsibility, Association of the Bar of the City of New York, "Financial Arrangements in Class Actions, and the Code of Professional Responsibility," 20 *Fordham Urban Law Journal* 831, 848 (1993). The American Bar Association's Model Code of Professional Responsibility, Disciplinary Rule 5–103(b) keeps the old rule but abandons it when a lawyer represents an indigent client pro bono. The American Bar Association's Model Rules of Professional Conduct, Rule 1.8(b) is similar.

We, in any event, do not have to decide the validity or wisdom of the California prohibition as it presently stands without exceptions. We have only to apply the Internal Revenue Code to the case before us. We have no desire to make the profession of law any more a business than it already is, and we acknowledge the Tax Court's sensitivity to the ethical norms still in force. Nevertheless, it is obvious that the Boccardo firm's arrangement does not "violate a law of the United States" as I.R.C. § 162(c) specifies as to one sort of nondeductible payment. We have no evidence that the arrangement comes within that statute's other proviso by violating "a state law that is generally enforced, which subjects the payor to a criminal penalty or the loss of a license." The Rules of Professional Conduct approved by the California Supreme Court and governing the legal profession might, in a pinch, be treated as "state law," although the characterization is arguable when there is a state statute regulating the same matters. There is no criminal penalty for the Rule's violation. Theoretically, no doubt, it could be enforced

**1020**

by revoking a lawyer's license, but we are presented with no evidence of such enforcement, nor do we know of any general enforcement of Rule 4–210(A). To the contrary, it has been judicially recognized in California that "the line between 'costs' and attorney overhead included as part of the lawyer's fee is an undefined and changing one." *See Ojeda, supra* at 8, 10 Cal.Rptr.2d 230; Flahaven, *California Practice Guide: Personal Injury* (1993) ¶ 1.182. The firm's arrangements were not illegal and so were not prohibited by I.R.C. § 162(c). The line of ethical inquiry pursued by the Tax Court ends when it becomes apparent that the criteria set by § 162(c) for disqualifying a deduction have not been met.

Holding that the firm incurred ordinary and necessary business expenses in the payment of costs and charges in connection with its clients' litigation, we reverse the judgment of the Tax Court and direct entry of judgment for the Boccardos.