Warren **BURNETT** and Emma Burnett, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 21884.

United States Court of Appeals Fifth Circuit.

Feb. 15, 1966.

Rehearing Denied April 5, 1966.

Edward L. Wilson and Arthur C. Flinders, Dallas, Tex., for petitioners.

Fred E. Youngman, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Sheldon S. Cohen, Chief Counsel, Charles Owen Johnson, Atty., I.R.S., Washington, D. C., for appellee.

Before RIVES, BROWN and MOORE,* Circuit Judges.

MOORE, Circuit Judge:

This is a petition to review a decision of the Tax Court, 42 T.C. 9 (1964), affirming the assessment of federal income tax deficiencies for the year 1961 against petitioners Warren and Emma Burnett, husband and wife,[1] (hereinafter referred to singularly as petitioner), which resulted from the disallowance of deductions, totalling $50,417.18, claimed as business expenses under Section 162 (a) of the Internal Revenue Code of 1954, 26 U.S.C. § 162(a).

Petitioner is an attorney in Odessa, Texas, whose practice is primarily devoted to representing plaintiffs in workmen's compensation and personal injury litigation on a contingent fee basis. As apparently is the custom among certain attorneys in Texas representing plaintiffs, petitioner, during the years 1957 through 1961, made disbursements to or on behalf of certain of his clients principally to provide for their living expenses incurred in the period during which he handled their claims. The clients, however, were not unconditionally obligated to repay such amounts. Rather, the disbursements were made with the understanding that repayment would occur only if, when and to the extent that petitioner was successful in effecting a recovery of a client's claim; and the excess, if any, was to be shared between petitioner and the client according to previously agreed upon percentages. From 1957 to 1961, such disbursements were made to 450 of the approximately 2,200 persons represented by petitioner. The total disbursements for each year during that period were $10,819.85 for 1957; $22,444.03 for 1958; $38,016.02 for 1959; $91,061.46 for 1960; and $169,676.20 for 1961; of which, as of the close of 1961, petitioner had recovered 96%, 83%, 88%, 75% and 34%, respectively.

Petitioner, who employs the cash basis of accounting, treated the disbursements as expenses when paid, and the recoveries as income when received. Consistently since 1957, on his federal income tax

---

* Of the Second Circuit, sitting by designation.

1. This case involves the deductibility from income of certain expenditures made by Warren Burnett to clients in the conduct of his law practice. His wife is a party because the income involved was community property under the laws of Texas, and was reported by them on separate returns filed on the cash receipts and disbursements basis.

returns, petitioner has claimed as a business expense deduction the excess of distributions made in the respective taxable years over the recoveries received in that year. In 1961, petitioner claimed the amount of $50,417.18 as a business expense deduction for "Advances to Clients Net of Collection on Settlement,"[2] but the deductions were disallowed by the Commissioner of Internal Revenue. Petitioner instituted proceedings in the Tax Court challenging the Commissioner's action, contending that the disbursements constituted ordinary and necessary business expenses deductible under Section 162(a) of the Internal Revenue Code of 1954. Petitioner testified before the Tax Court that it was customary for him, when making payments to clients, carefully to evaluate the strength of a client's claim, and that he endeavored to keep the amount of a disbursement to a client under the expected recovery on his claim. The Tax Court, relying on the above testimony and petitioner's recovery experience, treated the disbursements as advances made to clients with the expectation, substantially realized, that they would be recovered and held that they were not deductible as business expenses. In addition, the Tax Court held that petitioner "failed to establish" a claim that, through inadvertence, there had been included in the figure for gross disbursements to clients used to compute the claimed business expense deduction in the amount of $50,417.18, (a) $24,562.42 paid to cover various court costs incurred in the preparation of clients' cases for trial (these costs were paid without any specific agreement with clients as to

reimbursement and, according to petitioner's testimony, repayment was expected only if the litigation to which the costs related was successfully concluded), and (b) $10,292 paid to creditors of petitioner's clients out of their share of litigation recovery proceeds.[3] The court also remarked that the above claims were inconsistent with the facts stipulated by the parties.

The initial issue raised on appeal is whether the Tax Court's treatment of the disbursements as advances virtually certain of repayment rather than as business expenses, despite the fact that they were not made as formal loans for which the clients were personally liable, is supported by substantial record evidence. At the outset, we reject as without merit the contention that the Tax Court committed reversible error by refusing to hear the testimony of a Certified Public Accountant to the effect that it was proper accounting for petitioner to record the disbursements as expenses on his books. Whether the expenditures were properly characterized as expenses from the standpoint of sound accounting principles has no significant bearing on the issue presented here. The authorities are clear that labels or book entries given to expenditures do not control their deductibility as expenses. The true character of expenditures, which "depends upon the 'special facts' of each case," Dixie Mach. Welding & Metal Works, Inc. v. United States, 315 F.2d 439, 445 (5th Cir. 1963), determines their income tax consequences. See 4 Mertens, Federal Income Taxation §§ 25.13–.14 (1964).

2. These amounts represented their respective community shares of the amount of $50,417.18, which was the excess in 1961 of Warren Burnett's disbursements to or on behalf of clients in the amount of $169,676.20 over reimbursements in the amount of $112,923.41, or $56,752.79, less other miscellaneous items of income and reimbursed expenses in the amount of $6,335.61, which were erroneously treated as recovery of disbursements to clients in arriving at the aggregate $50,417.18 deduction on their returns.

With respect to petitioners' income tax returns for 1958, 1959 and 1960, the Commissioner has made adjustments concerning Warren Burnett's disbursements to his clients similar to those in issue here. They are being contested in other proceedings before the Tax Court.

3. Warren Burnett testified that the proceeds of collection out of which the alleged disbursements to creditors were made were included as income in his income tax return, so that the disbursements were merely offsets to his reported income.

To be deductible under Section 162(a), an expenditure must constitute an expense of carrying on a trade or business, as distinguished from some other type of expenditure made in connection with the taxpayer's business. See, e. g., Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933) (capital outlays not business expenses); Swed Distributing Co. v. Commissioner, 323 F.2d 480, 483–485 (5th Cir. 1963) (distributions of profits not business expenses); 4 Mertens, supra § 25.02 n. 10 (loans are to be distinguished from expenses); §§ 25.14–48. Moreover, it is well settled that an expenditure for which there is an unconditional right of reimbursement is not deductible as a business expense, see, e. g., Levy v. Commissioner, 212 F.2d 552 (5th Cir. 1954); Morriss L. Groder, 15 CCH Tax Ct. Mem. 1142, 1148 (1960), since "such expenditures are in the nature of loans or advancements. * * *" 4 Mertens, supra § 25.10 at 38n.98 (1960 rev.); Id. § 25.10 at 200 (1965 cumm. supp.). And, this principle has been relied upon to disallow claimed deductions for business expenses based on advances made by attorneys to, or on behalf of, their clients. Henry F. Cochrane, 23 B.T.A. 202 (1931) (attorney had absolute right to reimbursement); see Reginald G. Hearn, 36 T.C. 672 (1961) (record does not disclose whether clients' obligation to reimburse was absolute or conditional).

Petitioner argues, however, that the fact that the recovery of the disbursements involved here was conditional, i. e., if, when, and to the extent that a client's case was successfully concluded, renders the above principles inapposite and justifies treating the disbursements as business expenses which, if deemed ordinary and necessary would be deductible under Section 162(a). It is contended that no debt or loan can arise in the absence of an unconditional obligation to repay the money expended and that, therefore, there was no justification for the Tax Court's holding that petitioner's contingent disbursements constituted advances to clients, notwithstanding that they were made with the obvious expectation of reimbursement, and that a substantial portion of them were actually repaid.

It is essential to point out initially that the cases relied on by petitioner for the proposition that indebtedness requires an unconditional obligation to repay are not controlling here, for none of them deal with the question of what constitutes an expense for purposes of Section 162(a). Rather, they deal with the question of what constitutes a debt for purposes of Section 166 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 166 (deductions for bad debts), see Zimmerman v. United States, 318 F.2d 611 (9th Cir. 1963); Evans Clark, 18 T.C. 780 (1952), aff'd, 205 F.2d 353 (2d Cir. 1953) (construing the comparable Section 23(k) of the Internal Revenue Code of 1939), or what constitutes indebtedness for purposes of the "interest paid" deduction provided for in Section 23(b), Internal Revenue Code of 1939. See United States v. Virgin, 230 F.2d 880 (5th Cir. 1956) [Section 163(a), 26 U.S.C.A. § 163(a) is the comparable section of the Internal Revenue Code of 1954]. The technical definition of indebtedness employed in the application of such provisions of the tax law, which deal in terms with indebtedness, cannot properly be invoked in this proceeding where the deductibility of an expenditure as a business expense under Section 162(a) is at issue. Here there is no occasion to define the expenditures precisely, and it is enough to determine negatively that they were not expenses of petitioner's business when made. Cf. Glendinning, McLeish & Co. v. Commissioner, 61 F.2d 950, 952 (2d Cir. 1932).

We find that the record amply supports the Tax Court's conclusion that petitioner's expenditures constituted advances to his clients which were virtually certain to be repaid and, consequently, were not deductible as business expenses. Petitioner's contention that contingency of recovery, in and of itself, is sufficient reason for permitting the disbursements to be deducted fails to recognize that the question of whether

an expenditure constitutes an expense within the meaning of Section 162(a) must be determined by examining the circumstances and conditions under which it was made. Here there was a close correlation between the conditions of reimbursement and the primary criterion employed by petitioner to select clients to receive financial assistance, e. g., although reimbursement was tied to the recovery of a client's claim, assistance was granted only to those whose claims would in all probability be successfully concluded. Moreover, petitioner experienced a high rate of return on the advances, evidenced by the fact that during the five-year period ending in 1961 in which petitioner's conditional advances were made, only $4,417 out of approximately $290,000 of them became worthless. These factors clearly indicate that the advances were intended to, and did, operate as loans, i. e., advances virtually certain of repayment, to petitioner's clients. Under the circumstances, we agree with the Government that the Tax Court's decision in *Reginald G. Hearn*, supra, where it was determined that advancements by an attorney to his clients are not deductible as business expenses under Section 162(a), is highly persuasive. While the record in *Reginald G. Hearn* does not disclose whether the advances there were conditional, as petitioner's were here, the court's decision was greatly influenced by the fact that the taxpayer recovered a substantial portion of the advances ($3,018.49 out of a total of $3,639.94) shortly after they had been paid out. Id. at 674. Similarly, petitioner's recovery experience—as of the close of 1961 he had recovered 96% of the disbursements made in 1957; 83%

of those made in 1958; 88% of those made in 1959; 75% of those made in 1960; and 34% of those made in 1961— militates in favor of treating his disbursements to clients as non-deductible advances.[4]

In sum, the disbursements here were made only with the expectation that they would be substantially repaid, as evidenced by petitioner's high degree of selectivity in approving clients for financial aid (disbursements were to only 450 out of 2,200 clients represented by petitioner during the five-year period from 1957 to 1961). Moreover, there is nothing in the record to show that petitioner's rate of recovery under the contingent arrangement for repayment was any less that if his clients had assumed personal liability for repayment. Thus, the Tax Court properly characterized the disbursements as advancements virtually certain to be repaid, rather than deductible business expenses.

The other issue raised by this appeal is whether petitioner's contention that sums aggregating $24,562.42, representing amounts paid for court costs in preparing clients' cases for trial, and $10,292, representing amounts paid to clients' creditors from proceeds recovered in their behalf, were inadvertently included in the $50,417.18 claimed as a business expense deduction for advances to clients, was properly dismissed by the Tax Court as without factual support and as contrary to the stipulation of the parties? These claims were not contrary to the stipulated facts. The stipulation merely dealt with the total amount of disbursements made to, or on behalf of, petitioner's clients.[5] Moreover, the stip-

4. Petitioners' attempt to discredit these facts by invoking the proposition that, the mere possibility of reimbursement of an actual business expense does not preclude its current deduction even though reimbursement actually occurs in a later tax period is unpersuasive. The cases from which it is derived are inapposite, for they concern the possibility of recovering some or all of outright expenditures, i. e., actual expense items, not conditional advances such as those involved

here which cannot be considered ordinary and necessary business expenses. See Alleghany Corp., 28 T.C. 298 (1957); Mel Dar Corp., 19 T.C.M. 290 (1960), aff'd, 309 F.2d 525 (9th Cir. 1962), cert. denied, 372 U.S. 941, 83 S.Ct. 933, 9 L.Ed.2d 967 (1963).

5. The Stipulation stated that "during the calendar year 1961 petitioner * * * made certain disbursements to and on behalf of his clients totalling $169,676.20, and he also recovered certain disburse-

ulation expressly permitted the introduction of evidence not at variance with the facts stipulated and the Government did not object when petitioner was asked to explain whether the total disbursement figure included court costs or other miscellaneous expenses.

The Government contends, however, that the "meager record showing" with respect to petitioner's claims justifies their rejection by the Tax Court. We do not agree. While it is true that the sole evidence in support of the claims is petitioner's testimony, he carefully itemized the expenditures comprising the alleged $24,562.42 of court costs, as follows: payments to medical experts $16,172.50; other witness fees $4,741.35; court costs $1,388.66; payments to court reporters $557.65; payments to interpreters $130.-26; associate counsel fee $275.00; miscellaneous expenses $1,297.00. Moreover, he testified that he paid $10,292 on behalf of clients to their creditors contemporaneously with the conclusion of their cases and from the proceeds thereof. The above testimony was uncontroverted and the Government made no attempt to cross-examine petitioner with respect to the claim of inadvertence.

 Of course, it is well recognized that questions of witness credibility and the weight to be given evidence are for the determination of the Tax Court. See, e. g., Midland Ford Tractor Co. v. Commissioner, 277 F.2d 111, 115 (8th Cir. 1960). However, the fact that petitioner's testimony was unchallenged, the fact that he specifically set forth the amounts and purposes of the alleged expenses incurred in trial preparation, and the fact that the Tax Court failed to indicate whether, or on what basis, it discredited petitioner's testimony, lead us to conclude that petitioner should be provided an opportunity to further substantiate his claims. Thus, while we agree that no deduction should

be allowed for the advances to petitioner's clients, we remand this case to the Tax Court with the direction that it hear such evidence as is available concerning petitioner's claims (a) that he expended money for court costs and made payments to clients' creditors out of recovery proceeds, and (b) that such payments qualify as deductible expenses under Section 162 (a) of the Internal Revenue Code of 1954.

ments he had made to and on behalf of his clients in that year and in prior years totalling $112,923.41." In addition, it explained that the $50,417.18 deduction here in issue was the difference between

those figures, less net items totalling $6,-335.61 erroneously treated on petitioners' returns as recovery of disbursements to clients.