John J. Watts and Jean Watts v. Commissioner.
Watts v. Commissioner
Docket No. 2534-64.
United States Tax Court
T.C. Memo 1968-183; 1968 Tax Ct. Memo LEXIS 115; 27 T.C.M. (CCH) 886; T.C.M. (RIA) 68183; August 20, 1968. Filed John J. Watts, pro se, Watts Bldg., 403 N. Texas, Odessa, Tex., James F. Hart, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency in the petitioners' income tax of $47,450.19 for *116 the taxable year 1960. The basic issue for decision is whether disbursements made by the petitioner, a practicing lawyer, to or on behalf of his clients in 1960, which were to be repaid upon the successful resolution of their legal claims, are deductible in 1960 as ordinary and necessary expenses of carrying on a trade or business under section 162 of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts were stipulated, and those facts are so found. The petitioners were husband and wife during the taxable year 1960 and filed their joint Federal income tax return for that year, using the cash receipts and disbursements method of accounting, with the district director of internal revenue, Dallas, Texas. John J. Watts was a resident of Odessa, Texas, and Jean Watts was a resident of Dallas, Texas, at the time the petition was filed in this case. John J. Watts will be referred to as the petitioner. For many years, the petitioner has been principally engaged in the private practice of law in the State of Texas, devoting most of his time *117 to the representation of plaintiffs in personal injury and workmen's compensation claims, generally on a contingentfee basis. In the conduct of his law practice, the petitioner customarily makes disbursements to or on behalf of certain of his clients. The disbursements are used by clients principally to pay for living and medical expenses. Such a disbursement is made with the understanding that if recovery is obtained on the client's claim, the amount of the disbursement will first be repaid to the petitioner out of the proceeds recovered, and any excess proceeds will be shared by the petitioner and the client in previously agreed upon percentages. If no recovery is obtained, the amount of the disbursement will not be repaid to the petitioner. The making of such disbursements by attorneys is apparently a custom in the petitioner's area. Disbursements made by the petitioner to 192 different clients on cases pending settlement or trial totaled $58,689.30 on December 31, 1960. Of this amount, the petitioner was repaid a total of $46,080.13 in the years 1961 through 1965, and he lost $8,654.72 in connection with unsuccessful claims. As of January 1, 1966, $3,954.45 of the 1960 disbursements *118 were still outstanding. The disbursements made by the petitioner were recorded on the petitioner's books as expenses when made, and any recoveries of 887 disbursements were recorded as income when received. For the taxable year 1960, the respondent allowed the petitioner a deduction of $4,999.11 for advances by him in connection with unsuccessful claims disposed of prior to the end of 1960. Opinion The basic issue in this case is whether certain disbursements made by the petitioner to or on behalf of his clients in 1960, which were to be repaid upon the successful resolution of their legal claims, are deductible in 1960 as ordinary and necessary business expenses. The case of Warren Burnett, 42 T.C. 9 (1964), affd. on this issue 356 F. 2d 755 (C.A. 5, 1966), cert. denied 385 U.S. 832 (1966), involved similar facts as the case before us, and we held that the advances by the taxpayer were not deductible. However, the petitioner argues that his case is distinguishable and that several pertinent arguments were not presented for our consideration in Burnett, including the effect of a provision of the workmen's compensation law on the *119 recovery of the advances to clients. Our holding in Burnett was grounded on the theory that a disbursement made with the expectation of repayment is not a business expense at the time it is made. The Court of Appeals approved of our conclusion, saying that the disbursements there "were made only with the expectation that they would be substantially repaid." (356 F. 2d at 76) The petitioner argues that he did not have the same degree of expectation of repayment as Burnett. He points out that, for 1 year, Burnett was repaid approximately 96 percent of his disbursements, whereas the petitioner has collected only about 80 percent of his disbursements made in 1960. The petitioner also argues that Burnett was fairly selective in determining to whom to make advances, whereas the petitioner claims that he is not selective. Further, the petitioner argues that he is older than Burnett and consequently may not live sufficiently long to collect his disbursements. The petitioner has failed to prove the alleged differences in selectivity and age, but it is doubtful that the additional evidence would have altered the outcome. The essential point is that the disbursements were made *120 with an expectation of substantial repayment. We are unwilling to believe that the petitioner would have advanced $58,000 to his clients, unless he expected to recover all or most of it. The petitioner has failed to furnish us with any evidence as to his recovery experience for earlier years; the only evidence that we have concerns the recovery of the 1960 advances. That evidence shows that in connection with cases closed in the years 1961 through 1965, he recovered approximately 84 percent of the advances. Although the petitioner's experience may have been slightly less favorable than Mr. Burnett's, the difference does not warrant a different conclusion. We are convinced that when the petitioner made the advances in 1960, he expected substantial recoveries. The petitioner argues that section 3, Tex. Rev. Civ. Stat. Ann. Art. 8306 (1967), presents extreme difficulties in effecting the recovery of his disbursements to clients in workmen's compensation suits. That section provides that no part of the compensation recovered in a workmen's compensation suit is assignable and that such compensation is exempt from garnishment, additional judgment, and all other suits on claims. Although *121 the petitioner tells us of the dire consequences of this statute, it appears that he has successfully found some means of recovering his advances. Again, we express our doubt as to whether he would have made the advances had he not expected substantial recoveries. Furthermore, we have no information setting forth separately his recovery experience with respect to workmen's compensation cases and other cases, but his overall experience indicates that the provisions of section 3 have been no insurmountable obstacle to successful recoveries. The petitioner makes the additional argument that if his disbursements in 1960 are not deductible as business expenses, he should be entitled to a bad debt deduction for the portion of such disbursements that he determines to be uncollectible. The disbursements, at the time they are made, do not give rise to unconditional obligations to pay on the part of the clients. The obligation to repay does not arise until the case is closed. In connection with those cases that were closed before the end of 1960, losses were determined and allowed. However, in connection with the cases still pending at the end of 1960, there was no obligation to repay, and *122 therefore, no debt that could be ascertained to be worthless at that time. The petitioner next argues that the respondent is estopped from denying a 888 deduction for his advances to clients in 1960. The petitioner gives as his reasons for the claim of estoppel that the respondent allowed deductions for advances in earlier taxable years; that when the 1960 advances were repaid in later years, they were included in income; that if the deficiency is approved for 1960, the same income will be taxed twice; and that the respondent is arbitrarily refusing to credit the 1960 deficiency with the refunds for the later years. None of these reasons constitutes a basis for estopping the respondent from his claim in this case. This is not a case in which the respondent is attempting to take an inconsistent position with respect to the same transaction or in which the petitioner can demonstrate that he has relied upon the statements of the respondent to his detriment. Joseph Eichelberger & Co. v. Commismissioner, 88 F. 2d 874 (C.A. 5, 1937); Vestal v. Commissioner, 152 F. 2d 132 (C.A.D.C. 1945); Walsonavich v. United States, 335 F. 2d 96 (C.A. 3, 1964). *123 The information as to what was done in the years before 1960 is vague, but in any event, the law is clear - the respondent is free to take a different position with respect to 1960 than he may have taken for earlier years; his prior position does not estop him from changing his position. Easter v. Commissioner, 338 F. 2d 968 (C.A. 4, 1964), affg. per curiam a Memorandum Opinion of this Court, cert. denied 381 U.S. 912 (1965); South Chester Tube Co., 14 T.C. 1229 (1950). Moreover, the alleged circumstances with respect to the years after 1960, even if true, do not constitute a basis for estoppel. The petitioner was formally notified of the respondent's position in this case by the notice of deficiency dated March 20, 1964. At that time, he had ample opportunity to file protective claims for refund for the years 1961 and following. By filing such claims for those years, he could protect himself against the possibility of double taxation of the same income if it is determined that the advances in 1960 were not deductible expenses for that year, but were loans. In fact, the record indicates that the petitioner did file a claim for refund for 1961. *124 In view of the altogether adequate opportunity to protect himself against any double taxation, there is no reason to invoke an estoppel against the respondent. However, it does appear that it would have been more efficient and appropriate for the respondent to undertake an audit of the returns for the later years, so that a net adjustment could have been established for all the years. The petitioner further argues that he is being discriminated against by the respondent in violation of the equal protection clause of the 14th Amendment to the United States Constitution. The petitioner alleges that lawyers generally make similar advances to their clients and that the respondent is not generally denying a deduction for such advances. However, the petitioner has furnished no evidence to support his contention as to how other lawyers are being treated, and accordingly, has failed to prove his allegations. Finally, the petitioner argues that no interest should accrue on any deficiency determined for 1960 since the respondent has the petitioner's money for subsequent years that should be refunded. The Internal Revenue Code provides that the taxpayer must pay interest on any deficiency *125 and the Government must pay interest on any overpayment. Sections 6601 and 6611. In this manner, the interest problem of the petitioner will be equitably solved. Although we have carefully considered the many and varied arguments made by the petitioner, they do not warrant a different conclusion than that reached in the Burnett case. We hold that the advances by the petitioner to his clients in 1960 were not ordinary and necessary expenses of his business, and were not deductible, for that year. In order to reflect the agreement of the parties concerning other adjustments in the notice of deficiency, Decision will be entered under Rule 50. 889 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩