156 T.C. No. 4

UNITED STATES TAX COURT

SAN JOSE WELLNESS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 12313-15, 12353-15,                Filed February 17, 2021.
            15714-18.


P operates a medical cannabis dispensary pursuant to California law.  P incurred certain expenses in connection with its operations and deducted those expenses on its Federal income tax returns for the taxable years 2010, 2011, 2012, 2014, and 2015.  P's returns included deductions for depreciation and charitable contributions.

R disallowed all of P's deductions pursuant to I.R.C. sec. 280E for all the years at issue.  R also determined accuracy-related penalties under I.R.C. sec. 6662 for the taxable years 2014 and 2015, but has since conceded the penalty for the taxable year 2014.

P petitioned the Court seeking review of R's determinations.  P maintains that I.R.C. sec. 280E does not foreclose its deductions for depreciation and charitable contributions because (1) depreciation is not "paid or incurred during the taxable year" and (2) P's charitable contributions were not made "in carrying on" a trade or business.  In

addition, while recognizing that the argument is foreclosed by our decision in Patients Mutual Assistance Collective Corp. v. Commissioner, 151 T.C. 176, 190 (2018), to preserve its appellate rights, P argues that none of its expenses should be disallowed by I.R.C. sec. 280E because its business did not "consist of" trafficking in controlled substances. Finally, P asserts that it should not be subject to an accuracy-related penalty for the underpayment for the taxable year 2015 because it acted with reasonable cause and in good faith pursuant to I.R.C. sec. 6664(c)(1).

R disputes each of P's contentions.

Held: P's deductions for depreciation were properly disallowed because depreciation is an amount incurred during the taxable year.

Held, further, P's deductions for charitable contributions were properly disallowed because P made the contributions in carrying on its trade or business.

Held, further, under Patients Mutual, P's business consisted of trafficking in controlled substances.

Held, further, P has not shown that it acted with reasonable cause and in good faith with respect to the underpayment for the taxable year 2015, and the accuracy-related penalty for that year is sustained.

Henry G. Wykowski, Katherine L. Allen, and James Brooks Mann, for petitioner.

Nicholas J. Singer and Julie Ann Fields, for respondent.

## OPINION

TORO, <u>Judge</u>:  Section 280E[1] of the Internal Revenue Code (the "Code")

provides that "[n]o deduction * * * shall be allowed for any amount paid or

incurred during the taxable year in carrying on any trade or business if such trade

or business (or the activities which comprise such trade or business) consists of

trafficking in [certain defined] controlled substances."  In these deficiency cases,

we are asked to consider principally whether the deduction for depreciation

allowed by section 167(a) and the deduction for charitable contributions allowed

by section 170(a) fall within the broad prohibition of section 280E.  We conclude

that they do.  Accordingly, we hold that the deductions for depreciation and

charitable contributions claimed by petitioner, San Jose Wellness ("SJW"), for its

taxable years 2010, 2011, 2012, 2014, and 2015 are disallowed.[2]  We also hold that

SJW is liable for an accuracy-related penalty for 2015.

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[2]In addition, while recognizing that the argument is foreclosed by our decision in <u>Patients Mutual Assistance Collective Corp. v. Commissioner</u> ("<u>Patients Mutual</u>"), 151 T.C. 176, 190 (2018), to preserve its appellate rights, SJW argues that none of its expenses should be disallowed by section 280E because its business did not "consist of" trafficking in controlled substances. Following <u>Patients Mutual</u>, we reject that argument.  <u>See</u> <u>infra</u> Part III.

## Background

The parties submitted these cases fully stipulated under Rule 122. The facts below are based on the pleadings and the parties' stipulations of facts (including the exhibits attached thereto). The parties' stipulations of facts with accompanying exhibits are incorporated herein by this reference.

SJW is a corporation and maintained a principal place of business in San Jose, California, when its petitions were filed. During the taxable years ended October 31, 2010, 2011, 2012, 2014, and 2015, SJW operated a medical cannabis dispensary pursuant to California law. The dispensary was licensed by the City of San Jose.

SJW sold cannabis to individuals who held a valid doctor's recommendation to use cannabis. SJW also sold noncannabis items, including T-shirts, pipes, and batteries. In addition, SJW offered acupuncture and chiropractic services, as well as other "holistic" services. SJW did not charge a separate fee for membership, acupuncture, chiropractic services, or any other services.

For each of the taxable years at issue, SJW used the accrual method of accounting. For those years, SJW had gross receipts of $5,753,023, $6,283,393, $6,729,831, $4,997,684, and $5,476,844. SJW filed its 2010 tax return on July 25, 2011, its 2011, 2012, and 2014 tax returns on dates not established by the

record, and its 2015 tax return on June 15, 2016. In those returns, SJW claimed

depreciation deductions of $102,920, $24,250, $9,740, $2,958, and $434,253[3] and

charitable contribution deductions of $3,211, $0, $10, $1,035, and $125.[4]

On February 12, 2015, the Commissioner of Internal Revenue issued to SJW

a notice of deficiency disallowing deductions and other costs totaling $2,297,077

and $2,570,115 for the 2010 and 2011 taxable years, respectively. Included in the

disallowed amounts were the deductions for depreciation and charitable

contributions. The notice determined deficiencies in SJW's Federal income tax of

$786,498 for 2010 and $818,024 for 2011.

On the same day, the Commissioner issued to SJW a second notice of

deficiency disallowing deductions and other costs totaling $1,516,743 for the 2012

taxable year. Included in the disallowed amount were the deductions for

---

[3]SJW's return for the taxable year 2015 showed a depreciation deduction of $176,903 on Line 20 of Form 1120, U.S. Corporation Income Tax Return. In addition, that return reflected $257,350 of depreciation as part of the amount shown on Line 5 of Form 1125-A, Cost of Goods Sold, as explained in a supplemental schedule entitled "TY 2014 Itemized Other Costs."

[4]Schedule M-1, Reconciliation of Income (Loss) per Books With Income per Return, of SJW's return for the taxable year 2015 also reflected the following expenses recorded on the books but not deducted on the return: (1) $85 for depreciation, (2) $842 for travel and entertainment, and (3) $807,142 for other "non-deductible expenses."

depreciation and charitable contributions. The second notice determined a deficiency in SJW's Federal income tax of $515,693.

On May 21, 2018, the Commissioner issued to SJW a third notice of deficiency disallowing deductions totaling $2,870,073 and $2,649,775 for the 2014 and 2015 taxable years, respectively. Included in the disallowed amounts were the deductions for depreciation and charitable contributions. The third notice determined deficiencies in SJW's Federal income tax of $975,824 for 2014 and $907,116 for 2015. The notice also determined that SJW was liable for accuracy-related penalties under section 6662 of $195,165 for 2014 and $181,423 for 2015. The Commissioner eventually conceded the penalty determined for the taxable year 2014.

SJW timely filed petitions with the Court seeking redetermination of the deficiencies and penalties set forth in the Commissioner's notices. We consolidated the cases for disposition. As described further below, we will sustain the deficiencies as well as the penalty that remains in dispute.

## Discussion

### I. Applicable Legal Framework

The Code imposes a tax "on the taxable income of every corporation" for each taxable year. Sec. 11(a). As relevant here, "taxable income" is defined in

section 63(a) as "gross income minus the deductions allowed by this chapter."[5]

The Code further provides that, "[i]n computing taxable income under section 63, there shall be allowed as deductions the items specified in this part."[6] Sec. 161. The referenced "part" includes sections 167 and 170. Section 167(a)(1) allows "as a depreciation <u>deduction</u> a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) * * * of property used in a trade or business." (Emphasis added.) Similarly, section 170(a)(1) allows "as a <u>deduction</u> any charitable contribution * * * payment of which is made within the taxable year." (Emphasis added.)

As the Supreme Court has explained, the "deductions specified in Part VI of Subchapter B of the Income Tax Subtitle of the Code [which includes sections 167 and 170] are 'subject to the exceptions provided in part IX.'" <u>Commissioner v. Idaho Power Co.</u>, 418 U.S. 1, 17 (1974) (quoting section 161). One of these exceptions is section 280E. <u>See</u> <u>N. Cal. Small Bus. Assistants Inc. v. Commissioner</u> ("<u>NCSBA</u>"), 153 T.C. 65, 73 (2019); <u>Patients Mut. Assistance Collective Corp. v. Commissioner</u> ("<u>Patients Mutual</u>"), 151 T.C. 176, 190 (2018)

---

[5]The reference to "this chapter" is to chapter 1, Normal Taxes and Surtaxes, of subtitle A, Income Taxes, of the Code.

[6]The reference to "this part" is to part VI of subchapter B of chapter 1 of subtitle A of the Code.

(citing <u>Olive v. Commissioner</u>, 792 F.3d 1146, 1148 (9th Cir. 2015), <u>aff'g</u> 139 T.C. 19 (2012)).

> Section 280E provides:
>
> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

As relevant for these cases, the text of the statute makes clear that a deduction will be disallowed if each of the following conditions is satisfied:

(1)    the deduction is for an <u>amount paid or incurred during the taxable year</u>;

(2)    that amount was paid or incurred <u>in carrying on</u> any trade or business; and

(3)    that trade or business (or the activities that comprise the trade or business) <u>consisted of</u> trafficking in certain defined controlled substances.

We are called upon to decide whether certain depreciation and charitable contribution deductions claimed by SJW meet each of the statutory conditions summarized above (and are therefore disallowed under section 280E).  SJW

maintains that its deductions do not meet the conditions.  As we explain below, we disagree.

## II.    Import of Our Decision in NCSBA

Before turning to SJW's arguments, we pause to consider the significance of our recent decision in NCSBA as it relates to these cases.[7]  There, NCSBA--also a medical marijuana dispensary--sought to save from disallowance the deductions it claimed for taxes (under section 164) and depreciation (under section 167).  In support of its position, NCSBA argued that "section 280E limits only deductions under section 162," such that "deductions under sections 164 and 167 are allowed notwithstanding section 280E."  NCSBA, 153 T.C. at 72.  In an Opinion reviewed by the full Court, we rejected the argument, stating in relevant part:  NCSBA's "argument misses the first line of section 280E:  'No deduction or credit shall be allowed'.  (Emphasis added.)  Congress could not have been clearer in drafting this section of the Code."  Id. at 73.

We found support for this conclusion in the Code's text and structure:

> The broader statutory scheme also supports our conclusion that section 280E means what it says--no deductions under any section shall be allowed for businesses that traffic in a controlled substance.

---

[7]The Court considers it puzzling that the Commissioner's brief in docket No. 15714-18, which was filed after the Court issued its opinion in N. Cal. Small Bus. Assistants Inc. v. Commissioner ("NCSBA"), 153 T.C. 65 (2019), fails to cite, let alone discuss, NCSBA.

Section 261, in part IX of subchapter B of chapter 1 of the Code,
provides that "no deduction shall in any case be allowed in respect of
the items specified in this part." Section 280E is in part IX.
Similarly, section 161 provides that deductions found in part VI of
subchapter B of chapter 1 of the Code are allowed "subject to the
exceptions provided in part IX". Part VI provides a comprehensive
list of allowable deductions for taxpayers. This list includes
section 162 and section 165 deductions, which we have previously
disallowed pursuant to section 280E. See CHAMP, 128 T.C. at 180-
181 (disallowing section 162 deductions under section 280E); Beck v.
Commissioner, T.C. Memo. 2015-149, at *18 (disallowing a
section 165 loss deduction under section 280E). As relevant here, part
VI also includes sections 164 and 167, two additional sections
petitioner believes would allow it a deduction. Clearly, sections 164
and 167 are limited by the exceptions in part IX, including
section 280E. Thus, section 280E precluded petitioner from taking
any deductions under sections 164 and 167 that are tied to its medical
marijuana dispensary.

Id. (emphasis added).

The result reached in NCSBA is consistent with the outcomes of other cases.

See, e.g., Alt. Health Care Advocates v. Commissioner ("AHCA"), 151 T.C. 225,

240 (2018); Californians Helping to Alleviate Med. Problems, Inc. v.

Commissioner ("CHAMP"), 128 T.C. 173, 182 (2007). In AHCA and CHAMP,

the Court denied deductions for depreciation, and in AHCA we denied a deduction

for charitable contributions as well. See AHCA,151 T.C. 225; CHAMP 128 T.C.

173. In light of the parties' arguments in those cases, the Court did not separately

analyze the application of section 280E to sections 167 and 170; instead, the Court

denied all the deductions at issue. The ultimate results, however, were the same as the result in NCSBA.

Given the discussion in NCSBA, and the results in AHCA and CHAMP, we could end our analysis here. However, because SJW has advanced more nuanced textual arguments than those presented in NCSBA, AHCA, and CHAMP, we proceed to consider SJW's contentions on their merits rather than simply resting on our holdings in those cases. As shown below, SJW's arguments fail to carry the day.

III.    SJW's Arguments

A.    SJW's "Consist Of" Argument

We begin by addressing an argument that SJW offers simply to preserve its appellate rights, relating to the third of the statutory conditions summarized above. See supra Part I. SJW maintains that, because its trade or business includes more than the sale of cannabis items (for example, SJW also sells T-shirts and provides acupuncture services), that trade or business does not "consist of" (that is, does not comprise exclusively) trafficking in controlled substances. Therefore, SJW concludes, the statutory predicate is not satisfied and section 280E does not apply. As SJW recognizes, however, we rejected the same argument in Patients Mutual, 151 T.C. at 196-197 ("We therefore read section 280E to deny business-expense

deductions to any trade or business that involves trafficking in controlled substances, even if that trade or business also engages in other activities."). We see no reason to depart from that conclusion here.[8]

### B. SJW's "Paid or Incurred During the Taxable Year" Argument

We turn next to SJW's argument that the depreciation deduction under section 167(a)(1) falls outside the scope of section 280E because depreciation is not "paid or incurred during the taxable year." This contention relates to the first of the statutory conditions summarized above. See supra Part I.

SJW argues that the meaning of section 280E is unambiguous and that its reach is limited to "deductions and credits for business expenditures." In SJW's view, the business expenditures covered by section 280E include (but are not limited to) the expenses described in section 162. But they do not include depreciation because depreciation is not described in section 162 and is not an amount "paid or incurred during the taxable year." We need not address whether (for purposes of applying section 280E) depreciation might be described in section 162 because, regardless of the answer to that question, we disagree with

---

[8]SJW does not challenge the constitutionality of section 280E, so we need not address that question further. See NCSBA, 153 T.C. at 68-72. But see id. at 77-90 (Gustafson, J., concurring in part and dissenting in part).

SJW's contention that depreciation is not "paid or incurred during the taxable year." SJW's contention is foreclosed by the Code and Supreme Court precedent.

Section 7701(a)(25) provides that, "[w]hen used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof," "[t]he terms 'paid or incurred' * * * shall be construed according to the method of accounting upon the basis of which * * * taxable income is computed under subtitle A." Generally, "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Sec. 446(a). During the taxable years at issue, SJW used the accrual method of accounting, a permissible method under section 446. See sec. 446(c)(2).

As the Supreme Court has observed, Congress authorized the accrual method of accounting "to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period." United States v. Anderson, 269 U.S. 422, 440 (1926); see also Trinity Indus., Inc. v. Commissioner, 132 T.C. 6, 14, 19 (2009). See generally Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates & Gifts, para. 105.4 (Westlaw 2020), FTXIEG

(providing an overview of accrual accounting).  The Supreme Court explained how these principles apply to depreciation in Commissioner v. Idaho Power Co., 418 U.S. at 16-19.

In Idaho Power, the Court considered whether a taxpayer that used its own equipment in the construction of its own capital facilities was entitled under section 167(a) to a depreciation deduction for the current year with respect to the use of that equipment, or whether the deduction was barred by section 263(a)(1).[9] If the deduction was barred by section 263(a)(1), the amount of the deduction would be capitalized and recovered over the useful life of the constructed facilities.

Focusing on the concept of depreciation, the Court noted:

Over a period of time a capital asset is consumed and, correspondingly over that period, its theoretical value and utility are thereby reduced.  Depreciation is an accounting device which recognizes that the physical consumption of a capital asset is a true cost, since the asset is being depleted.  As the process of consumption continues, and depreciation is claimed and allowed, the asset's adjusted income tax basis is reduced to reflect the distribution of its cost over the accounting periods affected.  The Court stated in Hertz Corp. v. United States, 364 U.S. 122, 126 (1960):  "[T]he purpose of depreciation accounting is to allocate the expense of using an asset to the various periods which are benefited by that asset."  See also

---

[9]Section 263(a)(1) disallows a deduction for "[a]ny amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."  The Court in Idaho Power interpreted section 263(a)(1) of the 1954 Code, but the text of that section was identical to the text of the current Code.  See Commissioner v. Idaho Power Co., 418 U.S. 1, 3 n.2 (1974).

United States v. Ludey, 274 U.S. 295, 300-301 (1927); Massey Motors, Inc. v. United States, 364 U.S. 92, 96 (1960); Fribourg Navigation Co. v. Commissioner, 383 U.S. 272, 276-277 (1966). When the asset is used to further the taxpayer's day-to-day business operations, the periods of benefit usually correlate with the production of income. Thus, to the extent that equipment is used in such operations, a current depreciation deduction is an appropriate offset to gross income currently produced. It is clear, however, that different principles are implicated when the consumption of the asset takes place in the construction of other assets that, in the future, will produce income themselves. In this latter situation, the cost represented by depreciation does not correlate with production of current income. Rather, the cost, although certainly presently incurred, is related to the future and is appropriately allocated as part of the cost of acquiring an income-producing capital asset. [Fn. ref. omitted.]

Commissioner v. Idaho Power Co., 418 U.S. at 10-11 (emphasis added).

Idaho Power leaves no doubt that, as a "cost * * * certainly presently incurred," id. at 11, depreciation constitutes an "amount paid or incurred during the taxable year," sec. 280E.[10] Given that conclusion, section 280E applies by its express terms to SJW's circumstances.

---

[10]We ourselves have more than once characterized depreciation as being "incurred" in a given year or over multiple years. See, e.g., Procacci v. Commissioner, 94 T.C. 397, 405 (1990) (stating that a partnership "incurred depreciation on the improvements" related to a golf course); Curphey v. Commissioner, 73 T.C. 766, 768 (1980) (stating that a doctor "incurred depreciation and paid other expenses" in connection with a home office); Producers Chem. Co. v. Commissioner, 50 T.C. 940, 959 (1968) (stating that the taxpayer "used machinery * * * and incurred depreciation on that machinery").

The parties agree that section 167(a)(1) provides a "deduction." <u>See</u> sec. 167(a)(1) (allowing "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear" of certain items). And, as just discussed, that deduction is for an "amount paid or incurred during the taxable year." Sec. 280E. With respect to the first statutory condition summarized above, the text of section 280E requires no more. Moreover, SJW agrees that the depreciation here was incurred "in carrying on" a trade or business (satisfying the second statutory condition), and we have already explained that SJW's trade or business "consist[s] of" trafficking in controlled substances (satisfying the third statutory condition). In view of the foregoing, section 280E disallows SJW's claimed depreciation deductions for all of the years at issue.[11]

---

[11]"For those who consider legislative history relevant," <u>Warger v. Shauers</u>, 574 U.S. 40, 48 (2014), we note that, in its report on the bill proposing what became section 280E, the Senate explained the provision as follows: "All deductions and credits for amounts paid or incurred in the illegal trafficking in drugs listed in the Controlled Substances Act are disallowed. To preclude possible challenges on constitutional grounds, the adjustment to gross receipts with respect to effective costs of goods sold is not affected by this provision of the bill," S. Rept. No. 97-494 (Vol. 1), at 309 (1982), 1982 U.S.C.C.A.N. 781, 1050. This statement suggests that Congress intended to deny deductions and credits to the extent of its constitutional authority. Moreover, the Senate amendment proposing to add what would become section 280E was adopted in Conference, and the conference report used the same expansive text to describe the effect of the new provision. H.R. Rept. No. 97-760, at 597-598 (1982), 1982-2 C.B. 600, 661.

This conclusion is entirely consistent with other authorities related to depreciation.  For example, section 168 makes clear that the amount of allowable depreciation is determined for each taxable year and is therefore a deduction for an item incurred during that year.  See sec. 168(b)(1)(B) (providing that the applicable depreciation method switches for a particular taxable year according to the amount allowable in that year under various methods).  Similarly, if a taxpayer sells equipment used in a trade or business in the middle of a year, the taxpayer is allowed a depreciation deduction for the portion of the year in which the equipment was used.  Sec. 1.167(a)-10(b), Income Tax Regs.  This rule accounts for the fact that, as a taxpayer like SJW uses depreciable property during the year, the property is "consumed" and ordinarily its value and utility are reduced.  Thus, the taxpayer incurs the type of cost envisioned by the Supreme Court in Idaho Power for that part of the year.[12]

Our conclusion here is also consistent with our decision in Fort Howard Corp. & Subs. v. Commissioner, 103 T.C. 345, 351 (1994), supplemented by 107 T.C. 187 (1996).  There, we considered section 162(k)(1), which provided that "no

---

[12]As the Supreme Court recognized in Idaho Power, "depreciation--inasmuch as it represents a using up of capital--is as much an 'expenditure' as the using up of labor or other items of direct cost."  Commissioner v. Idaho Power Co., 418 U.S. at 17 (quoting Brooks v. Commissioner, 50 T.C. 927, 935 (1968), rev'd, 424 F.2d 116 (5th Cir. 1970)).

deduction otherwise allowable shall be allowed under this chapter <u>for any amount paid or incurred</u> by a corporation in connection with the redemption of its stock." (Emphasis added.) We were asked in <u>Fort Howard Corp. & Subs. v. Commissioner</u>, 103 T.C. at 367, to decide whether "amortization constitute[s] an amount paid or incurred," and we "answer[ed] this question in the affirmative." Our analysis relied on <u>Idaho Power</u>, noting that, "[f]or tax purposes, amortization serves a purpose similar, if not identical, to depreciation." <u>Id.</u> at 368 (citing <u>Ark.-Okla. Gas Co. v. Commissioner</u>, 201 F.2d 98, 102 (8th Cir. 1953), <u>rev'g</u> 17 T.C. 1208 (1952), and Black's Law Dictionary 76, 397 (5th ed. 1979) (defining of "amortization" and "depreciation")).[13] Like the depreciation here, therefore, the

---

[13]In reaching our conclusion we observed:

We note, as did the Supreme Court, see <u>Commissioner v. Idaho Power Co.</u>, 418 U.S. 1, 16 n.11 (1974), that depreciation has been held not to be an expenditure or payment for purposes of a charitable contribution deduction under sec. 170, see <u>Orr v. United States</u>, 343 F.2d 553 (5th Cir. 1965), or for purposes of a medical expense deduction under sec. 213, see <u>Gordon v. Commissioner</u>, 37 T.C. 986 (1962). In distinguishing those decisions, the Supreme Court stated:

Section 263 is concerned, however, with the capital nature of an expenditure and not with its timing, as are the phrases "payment * * * within the taxable year" or "paid during the taxable year," respectively used in §§ 170 and 213. The treatment of depreciation under those sections has no relevance to the issue of capitalization here. * * *

(continued...)

amortization at issue in Fort Howard was an "amount paid or incurred" by the taxpayer.[14]

C.      SJW's "In Carrying On" Argument

SJW next argues that, even if we disallow its depreciation deductions, its charitable contributions should be deductible in light of the second statutory condition described above.  Specifically, SJW contends that its charitable contributions were not paid "in carrying on" a trade or business as required by section 280E.  We disagree.

As relevant here, section 280E applies to disallow a deduction for "<u>any amount</u> paid or incurred * * * in carrying on any trade or business."  (Emphasis

---

[13](...continued)
Fort Howard Corp. & Subs v. Commissioner, 103 T.C. 345, 368 n.36 (1994), supplemented by 107 T.C. 187 (1996).  The same rationale applies to our analysis here.

[14]After we issued our decision in Fort Howard, Congress amended section 162(k) to add an exception to the general rule.  See Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1704(p)(2), 110 Stat. at 1886 (amending sec. 162(k)(2) to add sec. 162(k)(2)(A)(ii)).  Under that exception, "the expense disallowance rule of section 162(k) does not apply to any 'deduction for amounts which are properly allocable to indebtedness and amortized over the term of such indebtedness.'"  Fort Howard Corp. & Subs. v. Commissioner, 107 T.C. at 188.  Congress's action confirms that our interpretation of the phrase "amount paid or incurred" was correct.  In amending section 162(k), Congress left the general rule unchanged and added instead an exception for a certain fact pattern, confirming that, but for the exception, the general rule would apply to the amounts at issue.

added.)  SJW is a corporation that was engaged in a trade or business when it made the relevant charitable contributions.  California State law specifically authorizes a corporation to make charitable contributions, Cal. Corp. Code sec. 207(e) (West 2020), and courts have long permitted corporations to decide whether a charitable gift is consistent with their financial and operational goals, see, e.g., A.P. Smith Mfg. Co. v. Barlow, 98 A.2d 581 (N.J. 1953) (collecting authorities).  SJW chose to contribute the amounts at issue here, and we see no reason to conclude that this action was somehow separate from, or outside the scope of, its business activities. Many courts have acknowledged the potential benefits to a corporation of making a charitable gift, and there is no indication that we should question SJW's motivations in making these contributions.  See, e.g., United States v. Transamerica Corp., 392 F.2d 522, 524 (9th Cir. 1968) ("[A]n absolute requirement of detached and disinterested generosity or lack of any business purpose would tend to render ultra vires substantially all charitable contributions and thus to frustrate the congressional intent that corporations should enjoy such deductions."); Greene Cty. Nat'l Farm Loan Ass'n v. Fed. Land Bank of Louisville, 57 F. Supp. 783, 789 (W.D. Ky. 1944) ("[I]t is * * * well established that corporations are permitted to make substantial contributions which have the outward form of gifts where the activity being promoted by the so-called gift tends

reasonably to promote the goodwill of the business of the contributing corporation."), aff'd, 152 F.2d 215 (6th Cir. 1945). In our view, SJW contributed the amounts at issue "in carrying on" its trade or business.

In response, SJW's primary argument seems to be that amounts paid "in carrying on" a trade or business fall into a narrower category than amounts paid "in connection with" a trade or business, and that the former category does not encompass its charitable contributions. In support of this view, SJW compares the text of section 280E with that of section 162(a). The latter provides a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." (Emphasis added.) SJW contends that the phrase "in carrying on" significantly limits the universe of expenditures to which section 162 applies and that a similar analysis of section 280E confirms that the section does not apply to SJW's charitable contributions. We find this argument unpersuasive.

SJW is correct that courts have construed section 162(a) as inapplicable to certain categories of expenditures--for example, distributions of profits, loans, and capital expenditures. But courts typically do not ground these exclusions in the phrase "in carrying on." Rather, they rely on other requirements of section 162(a), such as the condition that an expenditure must be an "expense" that is both

"ordinary" and "necessary." Section 280E, which applies to "any amount paid or incurred," has no analogous requirements.

As an example, SJW cites Burnett v. Commissioner, 356 F.2d 755 (5th Cir. 1966), remanding 42 T.C. 9 (1964), for the proposition that "the phrase 'carrying on' distinguishes capital outlays, distributions of profits, and loans from expenses." In Burnett, the U.S. Court of Appeals for the Fifth Circuit considered whether advances paid by an attorney to clients he deemed likely to prevail were deductible business expenses under section 162. Id. Noting the attorney's careful vetting process and the high percentage of expenditures that he ultimately recouped, the Fifth Circuit concluded that the advances were virtually certain to be repaid and therefore should not be deductible. Id. at 759-760. But the court did not rely on the phrase "in carrying on" in reaching its conclusion--there was no question that the advances were paid in carrying on the attorney's business of representing clients. Rather, the court concluded that the advances operated as loans and therefore did not qualify as "expenses" within the meaning of section 162. Id. While undoubtedly correct, the analysis and conclusion in Burnett have no bearing on the treatment of SJW's charitable contributions.[15]

_____

[15]The court in Burnett stated in dicta that "[t]o be deductible under [s]ection 162(a), an expenditure must constitute an expense of carrying on a trade or business, as distinguished from some other type of expenditure made in

(continued...)

One case cited by SJW does address the meaning of the phrase "in carrying on."  In Snow v. Commissioner, 416 U.S. 500 (1974), the Supreme Court considered the taxpayer's deduction of research and development expenditures under section 174.  That provision allows a deduction for certain expenditures paid or incurred "in connection with" a trade or business during the taxable year.  Sec. 174(a)(1).  The Court concluded that the taxpayer was entitled to the deduction even though the expenditures were incurred during the startup phase of the taxpayer's business, before it had reported any sales.  Snow v. Commissioner, 416 U.S. at 501-502.  The Court noted that section 162(a) is unhelpful in analyzing section 174(a)(1) because the former "is more narrowly written" than section 174.  Id. at 503.  In particular, the Court found that Congress had used the phrase "in connection with" in section 174 to allow taxpayers developing new products

---

¹⁵(...continued)
connection with the taxpayer's business."  Burnett v. Commissioner, 356 F.2d 755, 759 (5th Cir. 1966), remanding 42 T.C. 9 (1964).  While SJW argues that the critical distinction in this statement is between "in carrying on" and "in connection with," the analysis in Burnett turns on the distinction between an "expense" and "some other type of expenditure" (i.e., a loan).  Id. at 759-760.  The cases cited in support of the quoted text similarly turn on the meaning of "ordinary and necessary expense" rather than the phrase "in carrying on."  See Welch v. Helvering, 290 U.S. 111 (1933) (capital outlays are not business expenses); Swed Distrib. Co. v. Commissioner, 323 F.2d 480 (5th Cir. 1963) (distributions of profits are not business expenses), aff'g T.C. Memo. 1962-41; Levy v. Commissioner, 212 F.2d 552 (5th Cir. 1954) (expenditures for which there is an unconditional right of reimbursement are not business expenses).

without established research departments to qualify for the deduction. Id. The Court implicitly recognized that no deduction is available under section 162(a) for costs incurred before the commencement of business, at least in part because of the requirement under section 162(a) that expenses be incurred "in carrying on" a trade or business. Other cases have reached similar conclusions. See, e.g., Frank v. Commissioner, 20 T.C. 511, 513-514 (1953).

We agree that, as the Court noted in Snow, the text of section 162(a)--and specifically the phrase "in carrying on"--is narrow in the sense that it applies only to expenses incurred while conducting a trade or business, and not to expenses incurred before a business commences or after its conclusion. But again, that distinction has no bearing on the results in these cases, where SJW concedes that the charitable contributions were made while it conducted its business.

SJW's argument that its charitable contributions by definition are not "business expenditures" misses the mark for similar reasons. Failing to qualify as a business expenditure may well be fatal under section 162, although the phrase does not appear in that section. The concept, however, has no relevance under section 280E, which applies to "any amount paid or incurred * * * in carrying on any trade or business." (Emphasis added.) The fact that the two provisions share

one phrase ("in carrying on") does not import the other requirements of section 162 into section 280E.

Finally, SJW argues that section 280E should not apply to charitable contributions as a matter of policy, because to decide otherwise could produce unfavorable outcomes for taxpayers who contribute capital property or inventory to charities. But these arguments are beside the point. When it enacted section 170, Congress was free to provide a deduction to taxpayers who met certain criteria, and when it subsequently enacted section 280E, Congress was equally free to disallow the deduction (or other similar benefits) based on new criteria. The requirements of section 280E are clear, and the hypotheticals posited by SJW are not relevant to these cases.

Based on the foregoing, we conclude section 280E applies to SJW's charitable contributions for the years at issue, and thus that the corresponding deductions are disallowed.

IV.  Accuracy-Related Penalty

Section 6662 imposes a 20% penalty on the portion of an underpayment of tax attributable to any substantial understatement of income tax.  Sec. 6662(a), (b)(2).  For corporations, an understatement of income tax is substantial if it exceeds the lesser of $10 million or "10 percent of the tax required to be shown on the return for the taxable year (or, if greater, $10,000)."  Sec. 6662(d)(1)(B).

There is no dispute that SJW's understatement of income tax for the taxable year 2015 was substantial within the meaning of the statute.[16]  Nevertheless, SJW can avoid the penalty the Commissioner determined if SJW acted with reasonable cause and in good faith with respect to the underpayment.  See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  SJW has the burden of proving that its actions satisfied this standard.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 449 (2001); see also NT, Inc. v. Commissioner, 126 T.C. 191, 195 (2006) (holding that the rules under section 7491(c) do not apply to penalties asserted against corporations).

To decide whether a taxpayer acted with reasonable cause and in good faith, we consider all relevant facts and circumstances, such as the "taxpayer's effort to

---

[16]The total tax required to be shown on SJW's return for 2015 was $972,718, as reflected in the notice that we sustain.  SJW's return, as filed, reported tax of $65,602.  The difference between the two amounts ($907,116) exceeds 10% of the tax that was required to be shown on SJW's return.

assess the taxpayer's proper tax liability" and its "experience, knowledge, and education." Sec. 1.6664-4(b)(1), Income Tax Regs.; see also Armstrong v. Commissioner, 139 T.C. 468, 478 (2012), aff'd, 745 F.3d 890 (8th Cir. 2014). A taxpayer may demonstrate reasonable cause through good-faith reliance on the advice of an independent professional, such as a tax adviser, a lawyer, or an accountant. See sec. 1.6664-4(b), Income Tax Regs.; see also Woodsum v. Commissioner, 136 T.C. 585, 591 (2011). An honest and reasonable misunderstanding of fact or law may indicate reasonable cause and good faith. Sec. 1.6664-4(b), Income Tax Regs.; see also Higbee v. Commissioner, 116 T.C. at 449. And in the penalties context more generally, a wide range of potential authorities--e.g., statutory text, regulations, caselaw, legislative history, and IRS guidance--is relevant to evaluating a taxpayer's position. Cf. sec. 1.6662-4(d)(3)(iii), Income Tax Regs.

The record offers little evidence that SJW acted reasonably and in good faith with respect to its 2015 underpayment. The parties agree that SJW followed the substantiation rules that applied to its claimed deductions, and SJW's 2015 tax return suggests that SJW incurred $807,142 of "non-deductible expenses" for that year, perhaps in acknowledgment of the CHAMP decision. But SJW has not argued here that it has another trade or business separate from its trafficking

business to which certain expenses should be allocated. Nor has SJW advanced any other argument to support such a bifurcated approach to its expenses. Indeed, the parties' stipulation of facts provides no insight into the process SJW followed in preparing its return.[17]

Further, SJW has not claimed that it relied in good faith on the advice of an independent professional in deducting the amounts at issue. Instead, SJW contends that the law in this area was sufficiently unsettled as of June 15, 2016--the date that SJW filed its Federal income tax return for 2015--that SJW reasonably reported its expenses. We are unpersuaded.

To begin with, the text of section 280E sweeps broadly to preclude a deduction for "any amount paid or incurred during the taxable year in carrying on any trade or business * * * [that] consists of trafficking in controlled substances." (Emphasis added.) By June 15, 2016, the U.S. Court of Appeals for the Ninth Circuit had affirmed our Court's interpretation of the phrase "consists of" in Olive v. Commissioner, 792 F.3d at 1149-1150, agreeing that section 280E applies with equal force to the deductions of taxpayers that undertake certain ancillary non-trafficking activities related to their trafficking activities. Moreover, in each of the

_____

[17]Although SJW claims that it voluntarily treated a portion of its expenses as nondeductible, neither the return nor the rest of the record explains how SJW reached that decision. And the fact that SJW's expenses were adequately substantiated does not mean SJW acted reasonably when it deducted them.

four marijuana dispensary cases that our Court had decided as of June 2016, we disallowed all of the taxpayer's claimed deductions, except to the extent those deductions were attributable to a separate trade or business of the taxpayer. See Olive v. Commissioner, 139 T.C. 19; CHAMP v. Commissioner, 128 T.C. 173; Canna Care, Inc. v. Commissioner, T.C. Memo. 2015-206, aff'd, 694 F. App'x 570 (9th Cir. 2017); Beck v. Commissioner, T.C. Memo. 2015-149. Legislative history and IRS guidance existing at the time reflected similarly expansive interpretations of section 280E.[18] See, e.g., S. Rept. No. 97-494 (Vol. 1), at 309 (1982), 1982 U.S.C.C.A.N. 781, 1050 ("All deductions * * * for amounts paid or incurred in the illegal trafficking in drugs listed in the Controlled Substances Act are disallowed."); Chief Counsel Adv. Mem. 201504011 (Jan. 23, 2015) ("[Section 280E] reverses the holding in * * * [Edmondson v. Commissioner, T.C. Memo. 1981-623,] as it relates to deductions other than the cost of the controlled substances.").

To summarize, at the time SJW filed its 2015 return in 2016, the text of section 280E, as well as the related caselaw, legislative history, and published

---

[18]The more recent cases and guidance available at the time SJW filed its 2015 return distinguish the facts here from those in Patients Mutual Assistance Collective Corp. v. Commissioner, T.C. Memo. 2018-208, which SJW cites in support of its position. Additionally, the taxpayer in that case presented credible testimony that he actively sought to comply with California law and this Court's caselaw. Id. at *7. SJW makes no such showing.

guidance, indicated that SJW's claimed deductions would be disallowed. SJW has offered little evidence to suggest that it considered these authorities--or took any other action--to determine its proper tax liability. On these facts, SJW has failed to establish that it acted with reasonable cause and in good faith with respect to the underpayment at issue. We therefore sustain the penalty determined by the Commissioner.

To reflect the foregoing,

<u>Appropriate decisions will be entered</u>.